# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 7, 2017          Decided October 24, 2017

No. 16-5296

CENTER FOR THE STUDY OF SERVICES, D/B/A CONSUMERS'
CHECKBOOK,
APPELLEE

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES AND CENTERS FOR MEDICARE AND MEDICAID
SERVICES,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00498)

———

*Karen Schoen*, Attorney, U.S. Department of Justice,
argued the cause for appellants. With her on the briefs was
*Mark B. Stern*, Attorney. *R. Craig Lawrence*, Assistant U.S.
Attorney, entered an appearance.

*Paige M. Jennings* argued the cause for appellee. With her
on the brief was *Caroline M. Brown*.

Before: ROGERS and MILLETT, *Circuit Judges*, and
RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Concurring opinion filed by *Senior Circuit Judge* RANDOLPH.

ROGERS, *Circuit Judge*: The government appeals the order of the district court, in response to requests pursuant to the Freedom of Information Act by the Center for the Study of Services ("Consumers' Checkbook"), directing the government to release health insurance plans to be offered "each year" on the federal exchanges under the Affordable Care Act once their terms are effectively final, or "locked down." The government contends that the order is contrary to the statutory scheme and unwarranted absent a finding the government had been and was likely to continue to be delinquent in responding to Consumers' Checkbook's requests. For the following reasons, we reverse the order granting prospective relief.

## I.

The Freedom of Information Act ("FOIA") provides that upon receiving a request for release of records, an agency shall release the information "promptly" to the requester. 5 U.S.C. § 552(a)(3)(A). A request that "reasonably describes" the records sought, *id.*, triggers the agency's obligation to search for and disclose all responsive records, *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007), unless the records fall within one of the statutory exemptions. The burden is on the agency to demonstrate that the records have not been "improperly withheld." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 & n.3 (1989) (citing S. REP. NO. 89-813, 2d Sess., 8 (1965); H. R. REP. NO. 89-1497, 2d Sess., 9 (1966)). District courts are authorized "to enjoin the agency from withholding

agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B).

Under the Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) ("ACA"), entities seeking to offer insurance plans on federally-funded healthcare exchanges must submit their proposals to the Centers for Medicare and Medicaid Services ("CMS"). Through an iterative process over several months, CMS determines which plans can be certified as a "Qualified Health Plan" and included on a federal healthcare exchange. Pub. L. No. 111-148, 124 Stat. 119 §§ 1301, 1302; 45 C.F.R. pt. 156. For example, entities seeking to offer plans in 2016 were required to submit data in May 2015 describing their proposed plans. CMS discovered deficiencies in the data for all proposals in 2015 and sent "correction notices." Corrected data in support of a revised plan was to be submitted by August 25, 2015. After that date, the data was "locked down" for final CMS review. Changes thereafter required CMS approval and were limited to technical changes, such as those "necessary to correct data display errors." In October 2015, CMS published the final plan lists and the eligible plans on the healthcare exchange website, HealthCare.gov.

Consumers' Checkbook is a nonprofit organization "dedicated to conducting and supporting studies of consumer services . . . and providing public benefit by publishing magazines, books, reports, and websites that educate and inform consumers." Letter of Nov. 29, 2013 to CMS from Robert Krughoff, President of Consumers' Checkbook. In November 2013, as healthcare exchanges were launching under the ACA, Consumers' Checkbook submitted a FOIA request to CMS for data related to the insurance plans that would be offered on the new healthcare exchanges. It requested that data as soon as it was initially provided to CMS. Having received no records, Consumers' Checkbook sued

CMS and the Department of Health and Human Services (collectively, "the agency") in March 2014, alleging they failed to "release any of the requested information or even to set a schedule for production of the information," Cmpt. ¶ 4, and that this delay prevented it "from establishing online consumer-help tools it sought to establish prior to the expiration of the ACA's initial open enrollment period," *id.* ¶ 5. It further alleged that "CMS's failure to respond raises doubts about whether the agency can be relied on to release similar information to Consumers' C[heckbook] for future plan years," when it intended to "provide up-to-date online tools for consumers during each annual, health plan enrollment period." *Id*. Consumers' Checkbook sought a declaration the agency had violated FOIA and an injunction against withholding the requested records, as well as a permanent injunction against "refusing to disclose or delaying the disclosure of substantially the same information sought for future plan years"; alternatively, it asked the district court to retain jurisdiction to ensure the agency "promptly disclose[s]" this information in the future. *Id*. 11.

Consumers' Checkbook submitted FOIA requests to the agency in June 2014, May 2015, and August 2016, each seeking the same type of data for the upcoming ACA open enrollment period. In 2013, 2014, and 2015, it sought the data as soon as it was submitted to CMS. In its 2016 request, Consumers' Checkbook sought records only after the data had been "locked down." The several FOIA requests were consolidated in the litigation pending in the district court. The basic dispute in the district court centered on the agency's invocation of Exemption 4, which permits agencies to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The agency maintained that all of the requested information is "confidential" and thus exempt from

release under FOIA, while Consumers' Checkbook argued Exemption 4 did not apply or did not apply to all of the requested information. *See* Mem. Order 6 (Aug. 16, 2016).

The district court initially denied the parties' cross motions for summary judgment. The court rejected the agency's position that the case was moot in light of release of the 2014 and 2015 requested information. Consumers' Checkbook had alleged that the delays in receiving the requested 2014 and 2015 information had interfered with its ability "to provide up-to-date online tools for consumers during each annual, health plan enrollment period." Cmpt. ¶ 5. As for the agency's reliance on Exemption 4, the court found, based on letters from insurers, that "one could conclude" actual competitive harm could arise from releasing plan benefits data prior to the open enrollment period. Mem. Op. 17, 21 (July 1, 2015) (citing *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999)). The district court adopted, by order, the parties' proposed schedule that called for the release to Consumers' Checkbook of the requested information for the 2016 plan year by September 15, 2015.

On August 16, 2016, the district court issued the challenged order. The district court concluded that Consumers' Checkbook's most recent FOIA request in 2016, seeking data after the "lock down" date, was "an extremely significant change," Mem. Order 8 (Aug. 16, 2016), which would do two things. First, it would allow Consumers' Checkbook more than a month to prepare its informational materials before the ACA open enrollment period began. Second, "no reliable evidentiary support" indicated that release of information after the "lock down" date would cause "substantial competitive harm" to any insurer. *See id*. 10–11. The court noted that plan changes allowed by CMS after the "lock down" date are limited and, moreover, that fluctuations

occur even to final plans and plan lists. Further, it noted that Consumers' Checkbook was not seeking any sensitive data or underlying actuarial or business assumptions. Accordingly, the court ruled that the requested information was not protected from disclosure under Exemption 4. *See id.* 9, 11. Because there was no reason to deny Consumers' Checkbook "what it is entitled to," *id.* 13, the district court rejected the agency's argument that no order of any kind should be entered, and denied its motion for summary judgment. Upon declaring the agency violated FOIA by withholding the requested benefits data after the lock down/final data submission deadline, the district court ordered "that the Government shall release the requested benefits data each year immediately after the Lock Down/final Data Submission Deadline." *Id*. 14. The Order did not state whether the agency was required to release the data even if Consumers' Checkbook did not file a FOIA request.

## II.

The government does not challenge the district court's determination that Exemption 4 was inapplicable to the information requested by Consumers' Checkbook in 2013 through 2016. Rather, it challenges the district court's order requiring release of such information "each year," Applt's Br. 10–11, which it contends "essentially gives [Consumers' Checkbook] 'automatic access'" to data without even requiring Consumers' Checkbook to file a FOIA request, *id.* 12. It contends, further, that FOIA does not authorize injunctions requiring the release of documents that do not yet exist.

### A.

As a threshold matter, Consumers' Checkbook contends that the court should decline to review the propriety of the challenged order because the government's appeal "rests on arguments that it did not raise before the district court."

Appellee's Br. 12. Whether viewed as a suggestion of forfeiture or waiver, *see United States v. Olano*, 507 U.S. 725, 733 (1993), this contention fails.

Consumers' Checkbook maintains that the government is arguing for the first time on appeal that FOIA does not authorize prospective relief, observing that Consumers' Checkbook "has sought prospective injunctive relief from the start of this litigation" and yet the agency "never suggested that such relief was unavailable under FOIA." Appellee's Br. 9—10. Yet in the district court the agency argued that the court lacked authority to issue a permanent injunction compelling the release of information in future years where the agency had not engaged in a policy or consistent practice of unlawful withholding. *See* Def.'s Mot. for Sum. Judgment at 41–42 (Dec. 4, 2015); Def.'s Combined Reply at 11 (Jan. 20, 2015); Def.'s Combined Cross-Mot. for Sum. Judgment at 2, 21–22 (Dec. 15, 2014).

This objection suffices to preserve the government's challenge for there is no basis to conclude that the government waived its objection to the unexpected nature of relief provided by the district court's order. Although the 2014 complaint sought prospective, automatic release of insurance plan data, Consumers' Checkbook's subsequent pleadings are less clear about whether it was seeking an injunction to prevent the agency from refusing to disclose this information in response to future requests or to require release even in the absence of a new FOIA request. *See* Pl.'s Opp'n to Def.'s Mot. for Sum. Judgment at 1–2 (Jan. 25, 2016). Underscoring the lack of clarity, Consumers' Checkbook suggests that if a prior request for information is required, then the order should be read to require it. Appellee's Br. 11–12. These are not the circumstances of either waiver or forfeiture. *See Olano*, 507

U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

**B.**

In challenging the district court's order, the government relies on the opinions of this court and the Supreme Court in *Tax Analysts v. United States Dep't of Justice*. 845 F.2d 1060 (D.C. Cir. 1988) ("*Tax Analysts I*"); 492 U.S. 136 (1989) ("*Tax Analysts II*"). These opinions discussed the definition of a record subject to FOIA, noting that FOIA challenges require showing "that an agency has (1) improperly; (2) withheld; (3) agency records." *Tax Analysts I*, 845 F.2d at 1064 (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)). In affirming *Tax Analysts I*, the Supreme Court noted that "the agency must be in control of the requested materials at the time the FOIA request is made." *Tax Analysts* II, 492 U.S. at 145. The government maintains that these cases "ma[k]e clear" that "[t]he district court could not properly order the release of records that do not currently exist." Applt's Br. 13.

Although excerpts from the *Tax Analysts* cases can be read to support the government's position, these cases were not focused on the propriety of injunctive relief but instead addressed which among existing documents constitute "records" for FOIA purposes. That is not an issue here, and as Consumers' Checkbook points out, this court has twice addressed the question of prospective relief and concluded it *is* available in certain circumstances.

In *Payne Enterprises v. United States*, 837 F.2d 486 (D.C. Cir. 1988), petitioners regularly made FOIA requests to the Air Force and the Air Force repeatedly declined to disclose information to petitioners notwithstanding that the Air Force acknowledged it was "following an 'impermissible practice' in

evaluating FOIA requests." *Id.* at 491 (quoting *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986)). This court, acknowledging that "FOIA imposes no limits on courts' equitable powers in enforcing its terms," *id*. at 494 (citing *Renegotiation Bd. v. Bannercraft Clothing Co*., 415 U.S. 1, 19—20 (1974)), remanded the case to the district court with instructions to award declaratory relief to Payne and also to "consider the propriety of injunctive relief" after "evaluat[ing] the likelihood that the Air Force will return to its illicit practice of delay in the absence of an injunction," *id.* at 494—95. The court suggested new affidavits from the parties could assist the district court in making its assessment and noted that the district court "should evaluate the likelihood" the Air Force would comply in light of its stated intent to do so but continued "reservations about the applicability" of two FOIA exemptions. *Id.* at 495. Last Term, the court in *Citizens for Responsibility and Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235 (D.C. Cir. 2017) ("*CREW*"), reaffirmed that "a plaintiff may challenge an agency's policy or practice where it will impair the party's lawful access to information *in the future*," and that district courts "possess[] authority to grant . . . a prospective injunction with an affirmative duty to disclose." *Id*. at 1242 (internal quotation omitted) (italics in original).

The government acknowledges that prospective relief is available in the FOIA context but interprets our precedent to limit that relief to circumstances where the agency has been "delinquent." Reply Br. 2–3, 4 (quoting *CREW*, 846 F.3d at 1246, and citing *Payne*, 837 F.2d at 494–95). Maintaining that there is no reason FOIA's ordinary remedies would not be adequate, the government points out that the district court made no finding of "delinquency or recalcitrance" and that there was no reason for the district court to conclude that the government would continue to invoke Exemption 4 once that legal theory

was rejected by the district court. Reply Br. 2–3. Further, the government observes, circumstances could change and, in its view, an agency should not be forced to seek judicial amendment to an injunction in order to invoke a FOIA exemption.

It suffices here to focus on the absence of a necessary finding to support the issuance of injunctive relief. *See United States v. Regenerative Sciences, LLC*, 741 F.3d 1314, 1318 (D.C. Cir. 2014). The district court made no finding that the agency was adhering to a policy or practice that it acknowledged as impermissible, as in *Payne*. Neither did the court find the agency was likely, in the face of its ruling that Exemption 4 was inapplicable, to continue on that basis to impair Consumers' Checkbook's lawful access to the information in the future, as contemplated by *Payne* and *CREW*. Nor did the court find that the agency invoked Exemption 4 solely for purposes of delay, effectively flaunting the statutory scheme, much less that its invocation was frivolous on its face.

Understandably, the district court sought to ensure that the requested information would be released in a timely manner by the agency so Consumers' Checkbook could fulfill its educational public purpose. Agency delays in releasing the requested information had interfered with its public purpose. Yet the injunction was not based on a finding of delinquency or recalcitrance by the agency. Rather, in denying summary judgment, the district court did not preclude the possibility that Exemption 4 might apply in view of record evidence of competitive concern if proposed plans were released upon initial submission to CMS. Mem. Op. 21. Its determination changed in view of Consumers' Checkbook's "extremely significant" change in 2016, whereby the court was satisfied that "substantial competitive harm" was unlikely to occur if the

requested information was released after the later "lock down" date. Mem. Order 8. FOIA contemplates agency invocation of one or more statutory exemptions in response to a request, and it affords the requesting person an opportunity to bring its objection to the court when an agency fails to respond "promptly" if matters cannot be satisfactorily resolved by the parties. Delay ensued, but what occurred here was not the sort of agency delinquency under FOIA that our precedent contemplates could be appropriate grounds for injunctive relief, or at least the district court did not so find.

Although the district court's equitable powers are broad, *see, e.g.*, *Brown v. Plata*, 563 U.S. 493, 538 (2011), this court has required, even in the face of conceded agency recalcitrance in complying with FOIA, that the district court address, in determining whether injunctive relief would be appropriate, the likelihood of continued delinquent conduct by the agency, *see Payne*, 837 F.2d at 495. A government defendant is presumed to adhere to the law declared by the court. *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985). In *Tax Analysts I*, 845 F.2d at 1069 n.21, this court contemplated a tailored remedy in which the government retained discretion in responding to new requests. So did *Payne*, 837 F.2d at 492, as to withholding documents for reasons other than those that the court had previously rejected. The government represents here that in responding to Consumers' Checkbook's future requests for such data it would not assert the grounds that the district court rejected, *see* Applt's Br. 15, and thus that issuance of a declaration that the agency had violated FOIA, or an order directing the agency to release the requested plan-year data, would have been sufficient to ensure Consumers' Checkbook's lawful access to benefits information and to avoid the prospect of relitigating the same controversy for future years, *see* Reply Br. 9–10. Further, the record reflected the parties' agreement to a

forward-looking procedure in 2016 and that accommodation left no apparent ground to conclude that a permanent "automatic access" injunction was required.

Accordingly, because the district court erred in issuing a permanent injunction, we reverse the order granting prospective relief.

RANDOLPH, *Senior Circuit Judge*, concurring:

While I join the majority opinion in full, I think it worth emphasizing that although equitable remedies are discretionary, they are not left to the district court's "inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (No. 14,692d) (Marshall, C.J.). In FOIA cases, one such principle demands that "[a]s with any equity case, the nature of the violation determines the scope of the remedy." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971). I agree with the majority opinion that the FOIA decisions of this court dealing with prospective injunctive relief are consistent with this limiting equitable principle. Maj. Op. 8–10.