Opinion for the Court filed by Circuit Judge ROGERS.
ROGERS, Circuit Judge : For years, Judicial Watch has monitored expenditures of U.S. Government funds on "VIP" travel by submitting requests for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the U.S. Secret Service and other agencies and reporting its findings to the public. Between 2012 and 2014, when the Secret Service failed to make requested records available in a timely manner, Judicial Watch was forced to file a lawsuit on five separate occasions in order to obtain the records. Upon such filing, the Secret Service produced non-exempt records, mooting the litigation.
In November 2015, Judicial Watch was forced again to file a lawsuit when the Secret Service failed to make available records in response to nineteen travel-related FOIA requests submitted over a thirteen-month *774 period. This time, in addition to seeking an order that the Secret Service produce requested records, Judicial Watch sought injunctive relief so the Secret Service would not continue to violate FOIA's mandate that federal agencies "shall" make requested records "promptly available." 5 U.S.C. § 552(a)(3)(A). Judicial Watch alleged that the Secret Service "has a policy and practice of violating FOIA's procedural requirements," by "regularly failing" to either produce requested records or make a determination regarding their availability in accord with FOIA's timetables, 5 U.S.C. § 552(a)(6)(A), or within a reasonable time. Compl. ¶ 22. Four months after the lawsuit was filed, the Secret Service, much as it had done on the five prior occasions when Judicial Watch had sued, produced non-exempt records, thereby mooting the production request.
The only question now before the court is whether the complaint adequately alleged a "policy or practice" claim under FOIA. The district court ruled that Judicial Watch had failed to plead sufficiently egregious facts and granted judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the court's precedent recognizes that a policy or practice claim may be predicated upon an agency's abuse of FOIA's statutory scheme, we reverse and remand to the district court for further proceedings.
I.
The Freedom of Information Act provides that federal agencies, "upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules ... shall make the records promptly available ." 5 U.S.C. § 552(a)(3)(A) (emphasis added). To ensure this mandate did not become a dead letter, Congress adopted a two-part approach. First, Congress imposed a set of requirements on federal agencies: It established timetables for agencies to respond to requests as well as procedures for agencies to obtain additional time, and required adoption of records management systems to facilitate "prompt" responses. Second, Congress provided members of the public whose records requests were denied a right to an administrative appeal and a right to seek judicial relief. Briefly summarized, the salient features of this two-part scheme are as follows:
First, an agency "shall determine" within twenty business days (one month) of receiving a FOIA request "whether to comply with such request," and "shall immediately notify the person making such request of such determination and the reasons therefor." Id. § 552(a)(6)(A). The agency may toll the response period once while seeking further information from the requester on the scope of the information sought. Id . In "unusual circumstances," the agency may extend the determination deadline by ten business days (two weeks) upon explaining the circumstances to the requester. Id. § 552(a)(6)(B)(i). If additional time is required to address the request, the agency "shall notify the [requester] ... and shall provide the person an opportunity to limit the scope of the request ... or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." Id. § 552(a)(6)(B)(ii).
To promote "efficient and appropriate compliance" with FOIA, id . § 552(j)(2)(A), agencies "shall" publish their internal organization and procedures relating to records requests, id. § 552(a)(1), and provide in electronic format instructions on how records may be requested, id. §§ 552(a)(2), (g). Agencies "shall" also maintain records systems by which requesters can obtain status updates on pending requests.
*775 Id. § 552(a)(7). Further, agencies "shall promulgate regulations" that "provid[e] for expedited processing of requests" when, for example, "the person requesting the records demonstrates a compelling need," and that "ensure" the agency makes such determination within ten business days. Id. § 552(a)(6)(E). Agencies are encouraged to "provid[e] for multitrack processing of requests." Id. § 552(a)(6)(D)(i). To assist in covering the costs of these requirements, agencies may impose reasonable fees for the processing of requests. Id . § 552(a)(4)(A).
Each agency also "shall designate" a Chief FOIA Officer, id. § 552(j), to monitor implementation of FOIA, keep government officials apprised of the agency's performance, develop policy recommendations, and otherwise facilitate public understanding of FOIA's exemptions, id. § 552(k). The officer, in turn, "shall designate" public liaisons responsible for "assisting in reducing delays, increasing transparency and understanding of the status of requests, and assisting in the resolution of disputes." Id. §§ 552(k)(6), (l ). Congress also required that agencies "shall annually report" to it on the requests received, processing times, determinations made, administrative appeals, pending cases, and related information. Id. §§ 552(e), (k)(4)-(5).
Second, FOIA provides procedural protections for a member of the public requesting records from an agency. Upon a denial of a request, the requester may seek reconsideration by the head of the agency. Id. § 552(a)(6)(A)(i). Upon exhausting the administrative appeal, the requester may seek judicial relief. Id. §§ 552(a)(4)(B), (a)(6)(A)(ii). Exhaustion is excused when the agency fails to make a timely determination - that is, within the timetables established in § 552(a)(6) - whether to produce records or to withhold them pursuant to a statutory exemption. Id. § 552(a)(6)(C)(i). Judicial relief, in turn, may extend beyond requiring production to providing injunctive relief. Id. § 552(a)(4)(B).
In sum, FOIA "reflect[s] 'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' " Dep't of Air Force v. Rose , 425 U.S. 352, 360-61, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) (quoting S. REP. No. 813, 89th Cong., 1st Sess., 3 (1965)). It "stand[s] in sharp relief against" the prior procedures under the Administrative Procedure Act, which were "generally recognized as falling short of its disclosure goals and came to be looked upon more as a withholding statute than a disclosure statute." EPA v. Mink , 410 U.S. 73, 79, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." Id. at 80, 93 S.Ct. 827. Congress's use of the word "shall" in issuing directives to agencies in support of the overarching mandate to make records "promptly available," 5 U.S.C. § 552(a)(3)(A), instructs courts that Congress contemplated meaningful agency engagement upon receipt of a FOIA request. Agencies initially have a month to determine whether records can be made available in light of nine statutory exemptions, id. § 552(b)(1)-(9), and have several ways to obtain additional time to respond to requests. This engagement is premised on agencies improving records management systems to enable "prompt" responses. Congress underscored the importance it attached to prompt responses by allowing judicial recourse, bypassing administrative exhaustion, if an agency fails to meet statutory timetables for disclosure or to justify *776 its delay in making nonexempt records available upon request. See Mink , 410 U.S. at 93, 93 S.Ct. 827 ; McGehee v. CIA , 697 F.2d 1095, 1101 (D.C. Cir. 1983).
The instant appeal brings into sharp focus the meaning of FOIA's mandate that agencies "shall" make requested records "promptly available" under this two-part scheme. Between July 2014 and August 2015, Judicial Watch submitted nineteen FOIA requests to the Secret Service for records on public expenditures for travel by President Obama and the First Lady, Vice President Biden, and former President Carter. Upon acknowledging receipt of and assigning tracking numbers to 17 of the 19 requests, the Secret Service took no further action and stood mute. In November 2015 - between three and eighteen months after the Secret Service had received Judicial Watch's records requests - Judicial Watch filed suit. Attached to its complaint was a chart showing as to each request that the Secret Service[1] had not made any of the requested records available nor advised Judicial Watch whether any records were exempt from disclosure. Citing the five lawsuits it had filed against the Secret Service in similar circumstances to obtain similar records, Judicial Watch alleged that "[t]he Secret Service regularly fails to issue determinations ... within the time period required by FOIA, causing [Judicial Watch] to bring suit in order to obtain the requested records." Compl. ¶¶ 7-8, 13 (emphasis added). The repeated, prolonged, and unexplained delays have prevented Judicial Watch from gathering complete records for its reports to the public on federally funded VIP travel. See id. ¶ 16. Further, Judicial Watch "intends to continue submitting identical or nearly identical travel-related FOIA requests as part of its on-going efforts to educate and inform the public about 'what their government is up to' and promote transparency, integrity, and accountability in government and fidelity to the rule of law." Id. ¶ 17.
Judicial Watch's complaint was in two counts. Count I alleged the Secret Service is "violating FOIA by failing to conduct a search reasonably calculated to uncover all records responsive to each ... request[ ] and is unlawfully withholding records responsive to each request." Id. ¶¶ 19-20. As relief it sought an order directing the Secret Service to search and produce the non-exempt records "by a date certain." Id. at 6-7. Count II alleged that the Secret Service, "[o]n information and belief ... has a policy and practice of violating FOIA's procedural requirements" by "regularly failing or refusing to produce requested records or otherwise demonstrate that [they] are exempt from production within the time period required by FOIA or at least within a reasonable period of time," id. ¶ 22, causing it irreparable harm, id. ¶ 23. It sought in relief an order enjoining the Secret Service from adhering to its policy or practice. Id . at 7.
In answering the complaint, the Secret Service acknowledged that it had not made "a final response to all of [Judicial Watch's] FOIA requests," Answer ¶ 14, and otherwise denied violating FOIA. It also moved for judgment on the pleadings pursuant to Rule 12(c) and to dismiss Count II with prejudice. In an accompanying memorandum, the Secret Service stated that it would, in accord with the district court's scheduling order, produce all non-exempt records by March 18, 2016. Within four months of the filing of the complaint, *777 the Secret Service had produced to Judicial Watch's satisfaction all requested non-exempt records, including some requested two years earlier, sought in Count I. As to Count II's request for injunctive relief, the Secret Service argued that the complaint failed to allege facts sufficient to support a policy or practice claim. Judicial Watch opposed the motion as to Count II and requested discovery of the Secret Service's FOIA practices in responding to its requests. Acknowledging that the repeated and unexplained failure to respond within FOIA's timetables or a reasonable time "could be due to a host of causes," Judicial Watch stated that it was unaware of any "unusual" or "exceptional" circumstances asserted by the Secret Service to justify its repeated failures to timely respond because the Secret Service "never has - nor does it now - offer such a reason [or] justification." Pl.'s Opp'n to Mot. for J. on Pldgs., at 6-7 (Mar. 12, 2016). "As such," Judicial Watch argued, "it[s] [non-responses] could also be the result of a policy or practice." Id .
The district court dismissed Count I as moot once the Secret Service produced the requested records. It also granted the Rule 12(c) motion for judgment on Count II, ruling that Judicial Watch had "failed to allege sufficient facts" establishing that the Secret Service had "adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of FOIA." Judicial Watchv. Dep't of Homeland Security , 211 F.Supp.3d 143, 146-47 (D.D.C. Sept. 29, 2016) (quoting Muttitt v. Dep't of State , 926 F.Supp.2d 284, 293 (D.D.C. Mar. 4, 2013) ). In particular, the district court stated that Judicial Watch "points to no fact or statement to establish why requests were delayed or how the delays were the result of an either formal or informal policy or practice to violate FOIA's requirements, rather than inevitable but unintended delay attributable to a lack of resources." Id. at 146. It sought no explanation from the Secret Service but speculated the delays were likely due to a lack of resources.
Judicial Watch appeals the Rule 12(c) judgment on Count II. Our review is de novo , accepting as true, as we must, the factual allegations in the complaint. Mpoy v. Rhee , 758 F.3d 285, 287 (D.C. Cir. 2014) (citing Ashcroft v. Iqbal , 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
II.
FOIA lawsuits generally become moot once an agency has made available requested non-exempt records, whether voluntarily or after court order. See Perry v. Block , 684 F.2d 121, 125 (D.C. Cir. 1982) (citations omitted). This court has recognized an exception to mootness where an agency has a "policy or practice" that "will impair the party's lawful access to information in the future." Payne Enterprises, Inc. v. United States , 837 F.2d 486, 491 (D.C. Cir. 1988) (citing Better Gov't Ass'n v. Dep't of State , 780 F.2d 86, 90-92 (D.C. Cir. 1986) ). The First Circuit had recognized a similar exception in Lybarger v. Cardwell , 577 F.2d 764, 767 (1st Cir. 1978), and the Ninth Circuit has followed suit, see Hajro v. U.S. Citizenship & Immigr. Servs. , 811 F.3d 1086, 1103 (9th Cir. 2015). FOIA authorizes a court not only to "order the production of any agency records improperly withheld," but also to "enjoin the agency from withholding agency records." 5 U.S.C. § 552(a)(4)(B). This injunctive authority does not limit the district court's inherent injunctive powers. See Renegotiation Bd. v. Bannercraft Clothing Co., Inc. , 415 U.S. 1, 20, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974).
In this circuit it is settled law that informal agency conduct resulting in long delays in making requested non-exempt *778 records available may serve as the basis for a policy or practice claim. Our decision in Payne is instructive. There, for almost two years Air Force officials repeatedly refused to produce requested copies of bid abstracts for government contracts by invoking two FOIA exemptions even though the Secretary of the Air Force had repeatedly determined the exemptions were inapplicable. Payne , 837 F.2d at 487-90. Payne sought administrative review, which "[w]ithout exception" resulted in the production of the requested records. Id. at 489. Payne nonetheless filed suit challenging the agency's "practice of unjustified delay." Id. at 487. On appeal, this court identified the nature of a policy or practice claim:
The fact that the practice at issue is informal, rather than crystalized in regulation or an official statement of policy, is irrelevant to determining whether a challenge to that policy or practice is moot. Courts have long recognized that there "may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention." So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit.
Id. at 491 (quoting Lybarger , 577 F.2d at 767 ).
Upon concluding that Payne's case was not moot, id . at 494, the court also concluded that the agency's "repeated delays" in making requested records available were "wholly unjustified" and "clear violations" of FOIA, id. at 488-89. "[T]hat Payne eventually obtained the information it sought provides scant comfort when stale information is of little value yet more costly than fresh information ought to be." Id. at 494. The court endorsed the interpretation of FOIA that:
Congress did not intend for ... agenc[ies] to use FOIA offensively to hinder the release of non-exempt documents. The appellants [i.e. , the requesting parties] have fully complied with the administrative scheme. It was the [agency]'s abuse of this scheme that forced the appellants to bring several lawsuits to obtain release of the documents. ... These unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.
Id. (quoting Long v. IRS , 693 F.2d 907, 910 (9th Cir. 1982) ). In remanding the case to afford Payne declaratory relief, this court instructed the district court to "consider the propriety of injunctive relief," id. at 494-95, after "evaluat[ing] the likelihood that the Air Force will return to its illicit practice of delay in the absence of an injunction," id. at 495.
The court applied Payne in Newport Aeronautical Sales v. Dep't of Air Force , 684 F.3d 160 (D.C. Cir. 2012). There, the agency had repeatedly invoked a FOIA exemption to deny requests for technical data, forcing a government contractor to request the records pursuant to the agency's more onerous disclosure scheme, which required submission of information that the contractor did not have due to the nature of its business. Id. at 162-63. The contractor sued, challenging the permissibility of the agency's interpretation of FOIA. This court held that the Air Force's belated disclosure of requested records after the contractor filed suit did not moot the policy or practice claim because the Air Force had persisted in its challenged *779 practice of non-disclosure. Id. at 163-64 (citing Payne , 837 F.2d at 491 ).
Judicial Watch does not allege agency misconduct in invoking FOIA exemptions as occurred in Payne or good-faith agency error in interpreting a FOIA exemption as occurred in Newport . Nor does Judicial Watch point to any formal policy or other substantive response by the Secret Service explaining its failures to "promptly" produce requested non-exempt records. Instead, Judicial Watch's policy or practice claim is based on the Secret Service's repeated, unexplained, and "prolonged delay in making information available." Payne , 837 F.2d at 491. It alleges that the Secret Service "regularly fails to issue determinations in response to [Judicial Watch's] travel-related FOIA requests within the time period required by FOIA, causing [Judicial Watch] to bring suit in order to obtain the requested records." Compl. ¶ 7 (emphasis added). It points to the five lawsuits[2] it had been forced to file when the Secret Service had previously employed the same non-responsive conduct: acknowledge receipt of the FOIA requests and assign them tracking numbers, remain mute until Judicial Watch filed a lawsuit, and only then undertake to make requested nonexempt records available, thereby mooting the litigation and escaping judicial review of its failures to comply with FOIA's procedural requirements.
Now seeking injunctive relief in view of the Secret Service's alleged flouting of the statutory scheme, Judicial Watch's complaint posits that the Secret Service has an informal practice, harmful to Judicial Watch's mission and work, of repeatedly withholding "nearly identical" records, without explanation, for unreasonable periods of time. Id. ¶¶ 7-9, 13-14, 22. Pointing to the FOIA requests underlying this lawsuit, Judicial Watch shows that the Secret Service made no determinations, timely or otherwise, whether it would make any of the records available. For example, on August 8, the Secret Service acknowledged receipt of the requests of July 21 and 28, 2014, for travel expenditures for President Obama's trips to New York City, Seattle, San Francisco, and Los Angeles, but had no further communication with Judicial Watch on these requests, or on twelve other requests. For three requests, the Secret Service provided a communication of an unidentified nature, but did not produce any requested records. Two requests were ignored entirely.
The Secret Service, in moving for judgment pursuant to Rule 12(c), has treated its non-responsiveness to Judicial Watch's requests as consistent with FOIA: When an agency fails "promptly" to produce requested non-exempt records or invoke an exemption within statutory timetables, the requesting party may file a lawsuit without exhausting the administrative remedy. See 5 U.S.C. § 552(a)(6)(C)(i). That is, failures to adhere to FOIA's pre-litigation requirements, including response deadlines and records management provisions needed to enable "prompt" determinations, do not establish a FOIA violation and consequently cannot be the basis for a policy or practice claim. See Appellee Br. 17-19. In other words, the Secret Service concludes the text of FOIA allows for this interpretation because even where an agency repeatedly fails to conform to FOIA's procedural *780 requirements in the first part of the statutory scheme, the requester can, under the second part of the scheme, file a lawsuit any time it seeks to gain access to agency records. That is, the Secret Service interprets FOIA the same way as any statute affording a right that may be vindicated by judicial enforcement; enacting FOIA's directives on pre-litigation requirements thus was unnecessary.
This interpretation is untenable for any number of reasons. Most significantly, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governor accountable to the governed." NLRB v. Robbins Tire & Rubber Co. , 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) ; see Nat'l Archives & Records Admin. v. Favish , 541 U.S. 157, 171-72, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004). Non-exempt records are to be made "promptly available," 5 U.S.C. § 552(a)(3)(A), for little more than payment of copying costs. The Secret Service's interpretation renders FOIA's mandate of "prompt" response superfluous, i.e. , a dead letter. Judicial Watch's complaint reflects that it has repeatedly been confronted with prolonged, unexplained delays by the same agency with regard to the same type of records and that six nearly identical lawsuits have not produced any change in the Secret Service's response to its proper requests until after it has filed a lawsuit. According to the complaint, only at that point has the Secret Service conducted a search to determine whether records can be made available or are exempt from disclosure, or engaged in consultations with Judicial Watch. The government points to nothing that would suggest that in providing a judicial remedy "to secure such information from possibly unwilling official hands," Mink , 410 U.S. at 80, 93 S.Ct. 827, Congress intended an agency's repeated flaunting of FOIA's pre-litigation procedural requirements to be excused once the requested records are made available upon being sued. That interpretation is inconsistent with Congress's remedial purpose in enacting FOIA to enhance government transparency subject to limited statutory exemptions, using a two-part scheme that imposed specific requirements on federal agencies. Our precedent on policy or practice claims disposes of any suggestion that Congress intended the repeated filing of lawsuits to be a practical requirement for obtaining records from an agency flaunting the statute. See Payne , 837 F.2d at 494 (citing Long , 693 F.2d at 910 ). Filing a lawsuit hardly ensures "prompt[ ] availab[ility]," 5 U.S.C. § 552(a)(3)(A), as the instant case and the five other lawsuits against this agency demonstrate, see supra note 2, not to mention the chilling effect that litigation costs can have on members of the public much less the burden imposed on the courts.
Therefore, a plaintiff states a plausible policy or practice claim under Payne by alleging prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements. As in Payne , the plaintiff must allege a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future. Judicial Watch's complaint meets these requirements. Given the Secret Service's repeated, prolonged, and as yet unexplained delays in making requested non-exempt records available, it cannot be gainsaid that Judicial Watch alleges sufficient facts under Federal Rule of Civil Procedure 8(a)(2) and Supreme Court precedent to "draw *781 the reasonable inference" that the Secret Service has adopted a practice of delay, contrary to FOIA's two-part scheme, by repeatedly standing mute over a prolonged period of time and using Judicial Watch's filing of a lawsuit as an organizing tool for setting its response priorities. Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 ; Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
The conclusion that such "unreasonable delay in disclosing non-exempt documents" is an "abuse of [FOIA's] scheme" follows ineluctably from the recognition that "Congress did not intend for the [agency] to use the FOIA offensively to hinder the release of non-exempt documents so as to "force[ ] the appellant[ ] to bring several lawsuits to obtain release of the documents." Payne , 837 F.2d at 494 (quoting Long , 693 F.2d at 910 ). And it is long established in this circuit that an agency's compliance with FOIA depends upon its "good faith effort and due diligence ... to comply with all lawful demands [for records] ... in as short a time as is possible." Open America v. Watergate Special Prosecution Force , 547 F.2d 605, 616 (D.C. Cir. 1976). Congress reinforced the importance of FOIA's timetables and its overarching mandate of prompt availability when it amended FOIA in 1974. Responding to agencies' concerns about the high volume of requests and lack of resources, Congress allowed agencies only ten additional days to respond where there were "unusual circumstances." See 5 U.S.C. § 552(a)(6)(B). Judge Leventhal has explained:
[T]he 1974 Amendments were deliberately drafted to force increased expedition in the handling of FOIA requests: "[E]xcessive delay by the agency in its response is often tantamount to denial. It is the intent of this bill that the affected agencies be required to respond to inquiries and administrative appeals within specific time limits." H. REP. No. 93-876, 93d Cong., 2d Sess. (1974).... The Congress even rejected a 30-day extension provision, narrowly drafted to take account of the special exigencies facing agencies.
Open America , 547 F.2d at 617 (Leventhal, J., concurring in the result) (emphasis added). Much as Congress has done in adopting "technology-forcing" provisions in other contexts, see, e.g. , Union Elec. Co v. EPA , 427 U.S. 246, 256-57, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976), Congress contemplated that agencies would improve their records management systems to ensure requested records are made "promptly available," 5 U.S.C. § 552(a)(3)(A). No authority has been cited that either the Supreme Court or this court has retreated from this understanding of FOIA's text, purpose, and history. An agency's use of a lawsuit as an organizing tool for prioritizing responses renders FOIA's requirements "insignificant, if not wholly superfluous." Duncan v. Walker , 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001).
The district court, however, conceived the issue of sufficiency of pleading differently. First, it treated Payne and Newport as establishing a floor for a policy or practice claim. In contrast with what it described as the "egregious, intentional agency conduct" in Payne and Newport , the district court ruled that Judicial Watch had alleged "mere delay." Judicial Watch , 211 F.Supp.3d at 147. "At best, Judicial Watch's alleged facts are merely consistent with a policy or practice claim." Id. ; see id. at 145 (citing Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 ). This court did not require egregious agency action to state a policy or practice claim. Rather, the court stated in Payne that even beyond a "refusal to supply information," an agency may engage in "some other failure to abide by the terms *782 of the FOIA" that could be a basis for finding the agency has an unlawful policy or practice. Payne , 837 F.2d at 491 (emphasis added). It would be ironic if a policy or practice claim could be based on misapplication of a FOIA exemption (as in Payne and Newport ), but not on an agency's total disregard of the obligations mandated by Congress and failure to take advantage of provisions allowing additional time to respond.
Second, the district court shifted to the requesting party the burden that FOIA places on the agency to explain its delay in making requested records available. See, e.g ., 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(A)-(C) ; ACLU v. U.S. Dep't of Defense , 628 F.3d 612, 619 (D.C. Cir. 2011). Concluding that Judicial Watch failed to show that the Secret Service had "adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA," Judicial Watch , 211 F.Supp.3d at 146 (quoting Muttitt , 926 F.Supp.2d at 293 ), the district court focused on Judicial Watch's shortcomings in "point[ing] to no fact or statement to establish why the requests were delayed or how the delays were the result" of an agency policy or practice, "rather than an inevitable but unintended delay attributable to a lack of resources," id. Pretermitting whether a lack of resources could ever suffice to excuse repeated, prolonged, and as yet unexplained delay, as the district court interjected, id. at 147, FOIA's text and structure require that the agency "at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n , 711 F.3d 180, 183 (D.C. Cir. 2013) (" CREW I "). This threshold requirement stands as a gateway to the transparency FOIA envisions.
The history of the Secret Service's conduct in response to Judicial Watch's FOIA requests, as alleged in the complaint, wherein Judicial Watch has been forced to file six lawsuits to obtain requested non-exempt records - all relating to the same subject matter - sufficed to state a plausible claim that the agency's practice was to utilize delay to flaunt FOIA's procedural requirements, and that filing a lawsuit to obtain requested records was an empty gesture in terms of preventing future prolonged delays, much less obtaining future relief, because the agency would moot the litigation and escape judicial review of its compliance with FOIA. The Secret Service's alleged practice of prolonged, repeated, and unexplained delay, if allowed to continue, would harm Judicial Watch's mission to inform the public about the costs of VIP travel by unlawfully interfering with its statutory right to "promptly" obtain non-exempt records upon request. See Newport , 684 F.3d at 163-64.
Of course, not all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief. FOIA's provisions for extensions of response time, where for example the agency shows "exceptional circumstances exist" upon "demonstrat[ing] reasonable progress in reducing the backlog of pending requests," 5 U.S.C. § 552(a)(6)(C), indicate as much. Even assuming for purposes of argument that Congress intended the judicial remedy to be a principal means to overcome unlawful agency withholding - an interpretation of FOIA that this court has long rejected - no authority has been cited to suggest agencies may require a requester routinely resort to court to obtain responsive non-exempt records. It seems doubtful such authority would exist *783 when agency "good faith effort and due diligence" are the touchstones underlying FOIA's statutory scheme. Open America , 547 F.2d at 616.
Unexplained agency delay still requires the district court to determine whether the agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, see 5 U.S.C. § 552(a)(4)(B), would be inadequate to overcome an agency policy or practice. See Ctr. for the Study of Servs. v. Dep't of Health & Human Servs. , 874 F.3d 287, 292 (D.C. Cir. 2017) ; Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice , 846 F.3d 1235, 1242, 1246 (D.C. Cir. 2017) (" CREW II "); Newport , 684 F.3d at 164 ; Payne , 837 F.2d at 491 ; Lybarger , 577 F.2d at 767. When injunctive relief is sought, "the necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." U.S. v. W.T. Grant Co. , 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Factors to be "considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance [of the violation] and, in some cases, the character of the past violations." Id. In the FOIA context, "the court's prime consideration should be the effect on the public of disclosure or non-disclosure." Long , 693 F.2d at 909 (citing W.T. Grant , 345 U.S. at 633, 73 S.Ct. 894 ). And as Congress's limited reaction in amending FOIA suggests, staffing shortages and work overload may not render injunctive relief inappropriate. See Open America , 547 F.2d at 616 ; id. at 617 (Leventhal, J., concurring in the result). The indication by government counsel during oral argument that an agency might permissibly use litigation as an organizing tool for responding to FOIA requests, see Oral Arg. 25:18-26:59, is not an encouraging sign.
Our dissenting colleague's interpretation of FOIA raises the question why Congress bothered to enact FOIA at all. After all, prior to FOIA, a person could request agency records and upon failing to obtain them seek relief in court, albeit an expensive and time-consuming process. Yet neither agency practices nor lawsuits under the prior statutory scheme resulted in transparency of government operations. The Supreme Court and this court have understood that Congress's purpose in enacting FOIA was to achieve greater transparency in support of open government, and that to accomplish this goal it placed the burden on agencies to act in good faith and exercise due diligence to make records available as quickly as possible, or invoke an exemption, and to improve their records management systems to enable prompt responses without routine judicial involvement. Our colleague's interpretation would bypass Congress's decision about how this goal can best be achieved.
In doing so, our colleague concludes Judicial Watch's complaint fails to state a claim for relief based on a policy or practice. Diss. Op. 791, 793-94. He does this by reading the complaint narrowly despite the Rule 8 stage of the proceedings, Mpoy , 758 F.3d at 287 (citing Iqbal , 556 U.S. at 678-79, 129 S.Ct. 1937 ), ignoring factual allegations that must be accepted as true, reasonable inferences from the detailed chart accompanying the complaint, and the context in which Judicial Watch was forced to file this sixth lawsuit against the same agency for release of the same type of records. His reading renders FOIA's requirements insignificant at best and effectively reinstates the pre-FOIA scheme. When properly read, the complaint alleges *784 that the Secret Service continues to abuse the statutory scheme and repeatedly moot litigation to escape judicial oversight, thereby denying Judicial Watch the prompt transparency that Congress intended in enacting FOIA.
Further, our colleague proceeds to address whether Judicial Watch could prevail beyond the Rule 8 pleading stage. He misreads the record and speculates on how the government might have responded had the complaint not been dismissed, Diss. Op. 795-99, thereby placing a pleading burden on Judicial Watch beyond what Rule 8 requires and flipping to the requester the burden that FOIA places on the agency to explain its delay. The record at the time the district court granted the government's Rule 12(c) motion shows that the Secret Service had done nothing beyond acknowledging receipt and assigning tracking numbers to most of Judicial Watch's requests. The record provides no basis to assume Judicial Watch was kept informed of what, if anything, the Secret Service had done in responding to its requests, see Diss. Op. 796-97; paragraphs 8-12 of the complaint allege to the contrary. In speculating about the government's explanation, our colleague embraces the idea that taking "hundreds of days to process requests," Diss. Op. 795, is a permissible interpretation of an agency's obligations under FOIA, when the statutory structure and our precedent in CREW I , 711 F.3d at 186-87, are to the contrary. He twists the congressional reporting requirement, Diss. Op. 794-95, designed to enable Congress to ensure agency compliance with FOIA into evidence of congressional approval of agency failure to comply. See, e.g ., S. REP. 93-854, at 32-33 (May 16, 1974); H.R. REP. 104-795, at 7, 14, 27-29 (Sept. 17, 1996); see also S. REP. 110-59, at 2, 7 (Apr. 30, 2007). And by conjuring up the notion that Judicial Watch's requests were "complex," Diss. Op. 795-96, our colleague again fails to read the record as it must at this Rule 8 stage. Even on appeal the Secret Service has not characterized Judicial Watch's requests as complex.
Accordingly, we reverse the Rule 12(c) judgment on the request for injunctive relief and remand Count II to the district court for further proceedings. Our disposition conforms to longstanding precedent interpreting agencies' obligations of "good faith effort and due diligence" upon receiving a FOIA request. Open America , 547 F.2d at 616. The district court is no less obligated to determine upon a well-pleaded complaint that an agency has organized its records management systems to enable prompt determinations to produce records or to invoke an exemption, and to monitor when necessary an agency's progress in adjusting its records management systems to enable it to comply with FOIA. See Ctr. for the Study of Servs. , 874 F.3d at 292 ; CREW II , 846 F.3d at 1246. The government's suggestion that Judicial Watch seeks a broad injunction requiring the Secret Service to prioritize its responses to Judicial Watch's future FOIA requests, thereby "distort[ing] the statutory scheme" and resulting in harm to "other members of the public who have an equal right to seek information from the government," Appellee Br. 21-22, is not well-taken. The Secret Service will have the opportunity on remand to explain its delays and to confirm how it intends in the future to conform to FOIA's mandate to make requested non-exempt records "promptly available." The district court, upon considering the complaint and the parties' further submissions, will determine, in the first instance, the appropriateness of discovery and tailored injunctive relief.
Concurring opinion filed by Circuit Judge PILLARD.
Dissenting opinion filed by Circuit Judge SRINIVASAN.

The Secret Service is a "distinct" entity within the Department of Homeland Security. See Homeland Security Act of 2002, Pub. L. No. 107-296 § 821, 116 Stat. 2135, 2224 (codified at 6 U.S.C. § 381 ).

See Judicial Watch, Inc. v. U.S. Secret Service , No. 12-1562 (D.D.C. 2012); Judicial Watch, Inc. v. U.S. Secret Service , No. 13-0647 (D.D.C. 2013); Judicial Watch, Inc. v. U.S. Secret Service , No. 13-0950 (D.D.C. 2013); Judicial Watch, Inc. v. U.S. Secret Service , No. 14-0046 (D.D.C. 2014); Judicial Watch, Inc. v. U.S. Secret Service , No. 14-1732 (D.D.C. 2014).