# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 24-7064

September Term, 2024

FILED ON: AUGUST 1, 2025

CHARLES TURPIN AND REGINA JACKSON,
APPELLANTS

v.

DISTRICT OF COLUMBIA, A MUNICIPAL CORPORATION AND MICHAEL CHEN, OFFICER, IN HIS INDIVIDUAL CAPACITY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01807)

Before: SRINIVASAN, *Chief Judge*, CHILDS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby **ORDERED** that the judgment of the district court be **AFFIRMED**.

## I.

On the night of September 18, 2020, Officer Michael Chen and another officer responded to calls of disturbances coming from the apartment of Charles Turpin and his guest Regina Jackson. After the officers identified themselves outside the apartment door, Turpin invited the officers to "come in, come in," as he approached the door from inside the apartment. *Turpin v. District of Columbia*, No. 22-cv-1807 (TJK), 2024 WL 1299372 at *1 (D.D.C. Mar. 27, 2024). When Turpin emerged at the door, he appeared to the officers to be acting strangely, possibly under the influence of drugs. After briefly speaking outside the apartment, the officers followed Turpin inside, where they discovered Jackson and observed what appeared to be drug paraphernalia in plain view. Turpin and Jackson were arrested but later released without charge. *Id.* at *2.

Turpin and Jackson later brought a civil suit in the district court against Officer Chen and the District of Columbia. The complaint includes a claim against Officer Chen under 42 U.S.C. § 1983 alleging an unlawful search and seizure in violation of the Fourth Amendment, and a claim against Officer Chen and the District of Columbia alleging common law trespass. *Turpin*, 2024 WL 1299372 at *1. The defendants moved for judgment on the pleadings. They argued that Turpin had consented to the officers' entry such that the entry and ensuing search could not have violated the Fourth Amendment or constituted a trespass, and that Officer Chen in all events was entitled to qualified immunity on the constitutional claim. *Id.* The district court agreed and entered judgment for the defendants. *Id.*

## II.

We review a grant of judgment on the pleadings de novo. *See Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777 (D.C. Cir. 2018). Turpin and Jackson challenge the entry of judgment against them on their Fourth Amendment and trespass claims on essentially the same grounds. They argue that the district court erred in concluding (a) that Turpin consented to the officers' entry at the apartment door and (b) that he did not later revoke any consent when inside the apartment. We disagree and affirm the district court.

### A.

We begin with the plaintiffs' Fourth Amendment claim against Officer Chen. They contend that the district court erred in concluding that Turpin's "come in, come in" statement qualified as consent to enter. They specifically argue that Turpin was too "under the influence" to give knowing consent and that his "come in, come in" statement in any event was "blurted out" and was "not in response to a request for consent to enter the premises." Turpin Br. 6, 9. They additionally submit that Turpin revoked any consent when inside the bedroom of the apartment and that he did so before the officers discovered any drug paraphernalia. Neither argument is persuasive.

First, there is no dispute of fact—nor could there be given that the plaintiffs' complaint incorporates the body-worn camera footage recorded by the officers—that Turpin told the officers to "come in, come in" as he approached the door. Larrain BWC 5:36:28–35. Nor is there any question that he did so after the officers had already identified themselves as police. *Id.* Even assuming we could somehow conclude that Turpin's "come in, come in" invitation did not constitute knowing consent to the officers' entry into his apartment—for instance, if we assume that his alleged incapacitation by drug use could vitiate any consent—his Fourth Amendment claim still fails. That is because no objective construction of the facts could defeat Officer Chen's entitlement to qualified immunity.

Qualified immunity "immunizes government officials from damages suits unless their conduct has violated a clearly established right," *Tolan v. Cotton*, 572 U.S. 650, 654 (2014)—i.e., a right that "is sufficiently clear that every reasonable official would have understood that what he

is doing violates that right," *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). Police officers of course can enter a residence if the occupant consents, and there is no basis in this case to conclude that the officers did not reasonably believe Turpin consented to their entry given his explicit invitation and the tenor of their exchange. The plaintiffs cite no law clearly establishing that Turpin's possible drug use could vitiate his consent or that officers are not entitled to take citizens at their word when invited to "come in." The plaintiffs rely on *United States v. Evans*, 194 F. Supp. 90, 92 (D.D.C. 1961), but a single district court decision does not itself set forth clearly established law for purposes of qualified immunity, *see Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008) ("In determining whether officers strayed beyond clearly established bounds of lawfulness, we look to cases from the Supreme Court and this court, as well as to cases from other courts exhibiting a consensus view."). And that case, at any rate, involved plain-clothes officers who were invited in when they went to an apartment with the hidden purpose of searching it for stolen goods, whereas this case involves uniformed officers who were invited in after identifying themselves and who did not visit the premises for the purpose of conducting a search there.

As for whether Turpin later revoked his consent after the officers entered the apartment, the plaintiffs point to a question Turpin posed to the officers when in the bedroom: "How is it that you are able to be in my house . . . you understand what I'm saying?" Larrain BWC 05:40:19–50. We agree with the district court that Turpin's question "would not have made clear to a reasonable officer that his continued presence . . . violated Plaintiffs' clearly established constitutional rights." *Turpin*, 2024 WL 1299372 at *n. 4. The question could be interpreted in a number of different ways, and for purposes of qualified immunity, the plaintiffs point to no clearly established law indicating that an ambiguous query of the kind posed by Turpin could amount to a sufficiently clear revocation of voluntary consent. *See, e.g., Burton v. United States*, 657 A.2d 741, 746–47 (D.C. 1994) (reviewing decisions concluding that revocation of consent must be "unequivocal" and holding the same). And because Officer Chen was not required to treat Turpin's question as a revocation of consent, we need not address whether the officers saw the drug paraphernalia before or after Turpin asked it—regardless, the officers were not obligated to leave upon hearing Turpin's query.

**B.**

The plaintiffs make similar arguments in support of their common law trespass claim, and those arguments fail for similar reasons. Qualified immunity is not an issue with the trespass claim because the doctrine does not apply to common law claims and because the plaintiffs bring their trespass claim against the District in addition to Officer Chen. Even so, the law of trespass, like the doctrine of qualified immunity, incorporates an objective reasonableness standard when assessing consent. *See* Restatement (Second) of Torts § 892 (1979) ("If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact."); *e.g., Saidi v. United States*, 110 A.3d 606, 611 (D.C. 2015) (looking to the Restatement (Second) of Torts in interpreting trespass law). And as we have already concluded, Turpin's invitation to enter the apartment was reasonably understood as

consent and his question inside the bedroom did not revoke that consent. As a result, the officers were legally in the premises under D.C. common law. *See Garay v. Liriano*, 943 F. Supp. 2d 1, 25 (D.D.C. 2013) ("[W]here officers lawfully enter a house, the entry will not constitute a trespass.").

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

## Per Curiam

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk