# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2021
No. 21-1489

**AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,**
*Plaintiff-Appellant,*

v.

**ANIMAL AND PLANT HEALTH INSPECTION SERVICE,**
**UNITED STATES DEPARTMENT OF AGRICULTURE,**
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: JUNE 2, 2022
DECIDED: FEBRUARY 16, 2023

Before:    LEVAL, PARKER, and MENASHI, *Circuit Judges*.

The American Society for the Prevention of Cruelty to Animals ("ASPCA") appeals the judgment of the district court dismissing its "policy or practice" claim brought under the Freedom of Information Act ("FOIA") against the Department of Agriculture and its component agency the Animal and Plant Health Inspection Service.

The ASPCA alleged that the agencies adopted a policy or practice of violating the FOIA when, on February 3, 2017, the agencies decommissioned two online databases of frequently requested documents. The ASPCA argued that the policy or practice violates the FOIA because the decommissioning exacerbated delays in processing FOIA requests and caused some requests to be improperly withheld through excessive redaction.

While the ASPCA's action was pending before the district court, Congress enacted a new statute that required the agencies to recommission the databases, and the agencies complied. The district court held that the ASPCA's policy or practice claim was resolved when the agencies recommissioned the databases as required by law. We agree and hold that under these circumstances the ASPCA cannot state a policy or practice claim. The judgment of the district court is affirmed.

Judge Menashi concurs in a separate opinion.

_____

KATHLEEN R. HARTNETT, Cooley LLP, San Francisco, CA (Patrick Hayden, Cooley LLP, New York, NY, and Erin Estevez, Holland & Knight, Tysons, VA, *on the brief*), *for Plaintiff-Appellant*.

NATASHA W. TELEANU, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

_____

PER CURIAM:

Plaintiff-Appellant the American Society for the Prevention of Cruelty to Animals ("ASPCA") appeals the judgment of the district court granting judgment on the pleadings to Defendants-Appellees the U.S. Department of Agriculture and the Animal and Plant Health Inspection Service ("APHIS"), a component agency of the Department (together, "the agencies"). The ASPCA brought twenty-six claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, challenging the withholding and redaction of requested records. According to the ASPCA, the records revealed information about the agencies' maintenance of animal welfare standards, including the licensing and regulation of animal dealers and exhibitors. The district court adjudicated each of the withholdings.

The ASPCA's last challenge—and the only one at issue in this appeal—was a "policy or practice" claim against the agencies. The ASPCA alleged that the agencies adopted a policy or practice that systematically violated the FOIA in a manner requiring equitable relief from the district court. The district court concluded that the ASPCA failed to state a policy or practice claim. We affirm.

## BACKGROUND

On April 8, 2019,[1] the ASPCA sued the agencies under the FOIA alleging that the agencies followed a "policy or practice" of

---

[1] The ASPCA filed an amended complaint on May 31, 2019. J. App'x 11-83. We rely on the ASPCA's allegations in the amended complaint.

3

violating the FOIA. [2] Specifically, the ASPCA alleged that the agencies

> have regularly and repeatedly failed or refused to abide by the FOIA's requirement that agencies shall determine within 20 business days of receiving a FOIA request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor. Furthermore, [the agencies] have regularly and repeatedly failed or refused to respond to [the ASPCA's] appeals within the time period required by the FOIA and have regularly and repeatedly failed or refused to release requested records promptly, within a reasonable period of time, or at all.

J. App'x 80-81; *see also* 5 U.S.C. § 552(a)(6)(A)(i). In addition, the ASPCA alleged that the agencies had "released only substantially redacted records, citing FOIA [e]xemptions that do not apply." J. App'x 81. The ASPCA's "policy or practice" claim encompassed the "erroneous redactions" as well as the "unreasonable, inexcusable and unexplained delays," both of which "blocked the ASPCA's access to vital information contained in the requested records." J. App'x 81. According to the ASPCA, these actions showed that the agencies "adopted, endorsed, or implemented a policy or practice that constitutes an ongoing failure to abide by the FOIA's requirements in

---

[2] The ASPCA's suit followed exhaustion of its administrative appeals. *See* 5 U.S.C. § 552(a)(6)(C)(i).

connection with the processing of [the ASPCA's] FOIA requests and appeals." J. App'x 80.

The allegations focused on the agencies' decommissioning of two public databases that included frequently requested documents. The ASPCA had relied on the databases to access information. These databases—the "Animal Care Information Search" and the "Enforcement Action" databases—"provided access to agency records detailing inspections of [Animal Welfare Act ('AWA')]-licensed facilities, including commercial breeding facilities, and enforcement actions taken by [the agencies] against these licensees for AWA violations." J. App'x 17-18.[3] The "ASPCA regularly reviewed inspection records and enforcement actions" by consulting the databases, so the decommissioning of the databases hindered its ability to obtain that information. J. App'x 18. The agencies decommissioned the databases on February 3, 2017, and, as a result, the ASPCA needed to request the records through the FOIA process.

The ASPCA alleged that, "[a]s a predictable consequence" of the decommissioning of the databases, the agencies' "FOIA requests increased significantly," leading to "a systemic breakdown" and a significant backlog of requests. J. App'x 21. Thus, the ASPCA alleged, the agencies' "policy or practice" was a "self-inflicted" harm pursued in "bad faith" and executed "when [the agencies] abruptly blocked

---

[3] Access to these records, according to the ASPCA, provides information about "commercial dog and cat breeders" subject to AWA regulations and serves "not only to warn the public about cruel puppy mill operations, but also to monitor [the agencies'] administration of the AWA, identify needed policy changes and provide guidance to lawmakers." J. App'x 18.

access to the[] databases and failed to take adequate measures to respond to the individual FOIA requests." J. App'x 21.

The ASPCA further alleged that "it is substantially likely that [the agencies] will similarly improperly withhold inspection photographs, enforcement records, and inspection reports in response to future FOIA requests." J. App'x 52. To remedy the alleged policy or practice violation, the ASPCA requested declaratory and injunctive relief, including the "[i]ssu[ance of] a permanent injunction directing [the agencies] to release to [the ASPCA] all wrongfully withheld records," a "[d]eclar[ation] that [the agencies'] policy or practice of failing to abide by the FOIA's procedural requirements is unlawful," and an injunction barring the agencies "from maintaining or continuing their policy or practice of violating the FOIA's procedural requirements." J. App'x 82.

The agencies denied having any policy or practice that violated the FOIA and argued that, in any event, an intervening act of Congress resolved the ASPCA's policy or practice claim. The Further Consolidated Appropriations Act of 2020 became law on December 20, 2019 and required the agencies to recommission the databases. 7 U.S.C. § 2146a, Pub. L. No. 116-94, § 788, 133 Stat. 2534, 2657 (2019). The Act directed the agencies to, "within 60 calendar days, restore on its website the searchable database and its contents that were available on January 30, 2017, and all content generated since that date; and … hereafter, make publicly available via searchable database, in their entirety without redactions except signatures," records including "all final Animal Welfare Act inspection reports" and "enforcement records." 7 U.S.C. § 2146a(a), (b)(1)-(2). In compliance with the Act, the agencies "removed certain redactions from inspection reports and animal inventories already posted in its

6

Public Search Tool and reposted all inspection reports and inventories dating back to January 2014" on February 18, 2020. J. App'x 231. Less than a month later, the agencies began posting final enforcement records as well. J. App'x 231. As a result, "many of the records requested" through the FOIA were "proactive[ly] post[ed]" and made "available online." J. App'x 231.

On April 20, 2020, the agencies moved for judgment on the pleadings or, in the alternative, summary judgment. The agencies argued that the ASPCA failed to state a policy or practice claim because the databases had been recommissioned. The agencies also reiterated the denial that the APHIS "ha[d] a pattern or practice, either formal or informal, of refusing to timely respond to FOIA requests or otherwise refusing to comply with the FOIA until a requester files a lawsuit." J. App'x 222. The agencies submitted a declaration that the APHIS "makes every effort to respond … to FOIA requests and appeals within the 20-day statutory timeframe," "seeks to fully comply with the FOIA," and "does not purposely or intentionally seek to violate the FOIA for any reason." J. App'x 222 (Declaration of APHIS FOIA and Privacy Act Director Tonya Woods). The agencies acknowledged the FOIA backlog[4] and described ways in which the agencies were "engaged in improving processes" to resolve it, including additional resources. J. App'x 227-28 (Woods Declaration). [5] The agencies also expressed "hope" that the

---

[4] Since fiscal year 2016, the APHIS "has had challenges in reducing its backlog" because of "setbacks" including "increased FOIA requests and litigation, which impact APHIS's ability to timely close FOIA requests and appeals." J. App'x 222-23.

[5] Woods stated that the APHIS "has requested and been granted additional resources"—including "three consecutive contracts" funding "contract

7

recommissioning of the databases would "reduce the number of incoming FOIA requests," further helping to address the backlog. J. App'x 231. The ASPCA cross-moved for summary judgment on May 18, 2020.

The district court granted the agencies' motion for judgment on the pleadings. *ASPCA v. APHIS*, No. 19-CV-3112, 2021 WL 1163627 (S.D.N.Y. Mar. 25, 2021).[6] The district court noted that the Second Circuit has neither recognized nor "delineated any legal standards for evaluating policy and practice claims," and it therefore applied "the legal framework established by the D.C. Circuit." 2021 WL 1163627, at *14. The district court concluded that the ASPCA's "allegations plausibly demonstrate that the [a]gencies made a decision … that led to a self-inflicted breakdown in their ability to timely process FOIA requests and promptly produce responsive records." *Id.* at *15. Yet the district court explained that the ASPCA's allegations did "not relate the entire story" because "Congress intervened to reverse" the decommissioning of the databases "by enacting Section 788 of the Further Consolidated Appropriations Act of 2020." *Id.* at *16.

Because "the offending policy and practice described in the Amended Complaint was the systemic collapse of the [a]gencies' FOIA processes following their decision to shut down the databases

---

attorneys to assist with the processing of animal welfare related FOIA requests and requests associated with FOIA litigation" "totaling approximately $1.5 million"—and had "created a new intake team" to log and respond to FOIA requests more efficiently. J. App'x 227-28.

[6] The district court also adjudicated the other twenty-six counts of the ASPCA's complaint, granting in part and denying in part each of the parties' motions for summary judgment. As a result, the ASPCA has received or will receive all the requested documents to which it is entitled.

8

in February 2017," the district court concluded that "the ASPCA has not established that the [c]ourt must intervene to correct a policy or practice that the [a]gencies have in place that will impair the ASPCA's lawful access to information in the future." *Id.* at *16 & n.13 (internal quotation marks and alteration omitted). The district court rejected the ASPCA's argument that the Appropriations Act and the recommissioning did not fully resolve its policy or practice claim because it sought an additional category of documents—photographs taken during licensee inspections—that the Act did not require to be published in the databases. The district court said that the amended complaint "does not plausibly support that the [a]gencies implemented some special policy or practice of withholding photographs from FOIA productions." *Id.* at *16 n.13. For these reasons, the district court decided that "the ASPCA does not state a valid policy and practice claim upon which relief can be granted." *Id.* at *16.

The district court also decided, "[i]n the alternative," that even if it had "broken new ground in the Circuit and found that the ASPCA successfully stated a policy and practice claim," the district court "would grant the [a]gencies' motion for summary judgment on the issue for substantially the same reasons: because Congress has already acted to address the challenged policies and practices, the record does not convince the [c]ourt that the equitable relief the ASPCA seeks is warranted." *Id.* at *16 n.15. The district court granted the agencies' motion for judgment on the pleadings and denied as moot the parties' cross-motions for summary judgment on the policy or practice claim. *Id.* at *17. The ASPCA timely appealed. J. App'x 732.

9

## STANDARD OF REVIEW

A party may move for, and a district court may grant, judgment on the pleadings after the pleadings are closed if the motion is filed "early enough not to delay trial." Fed. R. Civ. P. 12(c). We review such a judgment de novo under the same standard as the grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). That is, we evaluate a judgment on the pleadings to see whether the complaint fails to state a claim that is "plausible on its face." *Id.* In doing so, we "draw all reasonable inferences in the plaintiff's favor" to assess "whether a complaint's factual allegations plausibly give rise to an entitlement to relief." *Id.* (alteration omitted). While we "should assume th[e] veracity" of "well-pleaded factual allegations," we are "not bound to accept as true a pleading's legal conclusion." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (emphasis and alteration omitted).

## DISCUSSION

We agree with the district court that, even assuming that a "policy or practice" claim is cognizable, the ASPCA failed to state such a claim against the agencies because the Further Consolidated Appropriations Act of 2020 reversed the alleged policy or practice. The Act directed the agencies to "restore" each decommissioned database "and its contents" to the status quo ante and to "make publicly available" in the databases the AWA inspection reports and enforcement records that the ASPCA had sought in this litigation. 7 U.S.C. § 2146a(a), (b). The Act also required that such records be made available "in their entirety without redactions except signatures." 7 U.S.C. § 2146a(a), (b)(1)-(2). These requirements

10

address both aspects of the ASPCA's policy or practice claim—the alleged delays in responding to requests and the allegedly excessive withholdings and redactions. J. App'x 80-81.

The ASPCA urges us to follow the logic of the D.C. Circuit's decision in *Payne Enterprises, Inc. v. United States*, which held that "even though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." 837 F.2d 486, 491 (D.C. Cir. 1988); Appellant's Br. 35-36. But even if we were to adopt that court's reasoning, the D.C. Circuit in *Payne* contended with an extraordinary set of circumstances not present here. In that case, the requester had repeatedly sought agency records, in the form of bid abstracts, from the U.S. Air Force. 837 F.2d at 488-89. The agency repeatedly denied the requests without thorough explanation, and the requester appealed through the administrative process to the Secretary of the Air Force, who "made it clear that the officers' position was wholly unjustified" and ordered the records disclosed "without exception." *Id.* at 489. The officers, however, "continued to withhold the bid abstracts," forcing the requester "to make repeated appeals to the Secretary to obtain the information." *Id.* at 490. The D.C. Circuit decided that while the requester had received individual documents, the agency was "merely … refraining from the conduct of which [the requester] has complained while the case is pending" and was "free to return to [its] old ways." *Id.* at 491.

Following the logic of *Payne* would not warrant reversal in this case. Here, the agencies are not "free to return to [their] old ways" given the change in law that prohibits the agencies from decommissioning the databases and from withholding or redacting

11

many of the documents the ASPCA sought. Even if the ASPCA were correct that the allegedly improper responses to FOIA requests resulted from an agency policy, that policy is no longer operative due to a change in governing law. The agencies have not altered their conduct only while litigation is pending.

The ASPCA tries to rescue its claim by pointing to (1) the absence of certain agency records from the databases and (2) its allegation that the agencies initially improperly redacted some of the requested documents. First, the ASPCA notes that requested inspection photographs remain excluded from the publicly available documents in the two databases. Appellant's Br. 40-41. We disagree that absent photographs are enough to save the claim. The allegation regarding the delayed response and processing of the photograph requests cannot by itself sustain a policy or practice claim based on the "systemic breakdown" of the agencies' FOIA process resulting from the decommissioning of the databases. J. App'x 21. As noted by the district court, this alleged breakdown has been resolved by congressional action. Nothing in the complaint indicates that any future requests for photographs would not be processed in a timely fashion now that the agencies have recommissioned the databases and freed resources to devote to the relatively fewer FOIA requests for non-database records.[7]

Second, the ASPCA suggests that its allegation of improper redaction can stand apart from the allegation of unlawful delay. Appellant's Br. 4-5, 33, 41. But the only such plausible allegation in the complaint is a conclusory statement that the agencies have

---

[7] The complaint notes that the initial commissioning of one of the databases in 2009 "reduced incoming FOIA requests by 35%." J. App'x 18.

"released only substantially redacted records" with "FOIA [e]xemptions that do not apply." J. App'x 81. The ASPCA alleged that this practice began "on or about" the time of the decommissioning of the databases. J. App'x 81. A claim based on this allegation cannot survive the intervening change in law that required not only the recommissioning of the databases but also the publication of the records "in their entirety without redactions except signatures." 7 U.S.C. § 2146a(b).

We thus reach the same conclusion as the district court that the ASPCA has not stated a claim on which relief may be granted. The ASPCA does not ask us to adjudicate its claims over particular documents or to order the disclosure of documents improperly withheld. It asks us to order the agencies to comply with the FOIA.[8] But "[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001) (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)). Moreover, in adjudicating a FOIA dispute, "[a] declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution." *Payne*, 837 F.2d at 491. Because the ASPCA's concrete complaints about the databases and withholdings have been resolved, the ASPCA cannot state a policy or practice claim to seek a broad order mandating that an agency conform its FOIA process to a requester's notion of what would be reasonably expeditious—even

---

[8] *See* Oral Argument Audio Recording at 29:22 ("We were seeking compliance with FOIA.").

13

assuming that a policy or practice claim could be stated in the first place.

## CONCLUSION

The ASPCA cannot state a policy or practice claim that the agencies systematically violated the FOIA after an intervening statutory enactment required the restoration of the databases that underpinned the ASPCA's claim. We affirm the judgment of the district court.

MENASHI, *Circuit Judge*, concurring:

I agree with the court that, even if we were to recognize a "policy or practice" claim as cognizable under the Freedom of Information Act ("FOIA"), the ASPCA has not stated such a claim in this case. I write separately to explain that a "policy or practice" claim is not cognizable under the FOIA.

**I**

Once a complaint is properly filed, the FOIA provides a federal district court with "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). To decide whether such a remedy is appropriate, the court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions" set forth in the FOIA. *Id.* If the court decides that the records have been improperly withheld, it may "order[] the production of any agency records improperly withheld from the complainant and assess[] against the United States reasonable attorney fees and other litigation costs" and, if warranted, the court may "additionally issue[] a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding." *Id.* § 552(a)(4)(F)(i). In such a case, however, the court may not order the agency to alter its FOIA procedures or otherwise change its operations. Instead, the FOIA contemplates that "the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted against the officer or

employee who was primarily responsible for the withholding" and the "Special Counsel, after investigation and consideration of the evidence submitted, shall submit his findings and recommendations to the administrative authority of the agency concerned." *Id.* It is then the responsibility of the "administrative authority" to "take the corrective action that the Special Counsel recommends." *Id.*

This statutory scheme authorizes a federal district court to provide the narrow remedies of enjoining an agency from improperly withholding records and ordering it to disclose the requested records that were improperly withheld. It does not authorize a court to superintend the policies and practices of that agency.

Those who are "adversely affected or aggrieved by agency action" may instead challenge a policy or practice under the Administrative Procedure Act ("APA"). 5 U.S.C. § 702. "The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). "It requires agencies to engage in 'reasoned decisionmaking,'" *id.* (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)), "and directs that agency actions be 'set aside' if they are 'arbitrary' or 'capricious,'" *id.* (quoting 5 U.S.C. § 706(2)(A)).

In this case, the ASPCA might have pursued a challenge to the agencies' decommissioning of the databases under the APA. The ASPCA decided not to do so because it would have faced "different exhaustion requirements" and would have needed to identify "a specific final agency action we could point to under the APA."[1] In

---

[1] Oral Argument Audio Recording at 27:25.

addition to the requirements to exhaust administrative remedies and to identify a final agency action, the ASPCA would have needed to establish on the merits that the decision to decommission the databases was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). By pursuing its challenge to the decommissioning of the databases not as an APA claim but as a "policy or practice" claim under the FOIA, the ASPCA evaded these legal requirements. It argued that a court should order the agencies to reverse the decision to decommission the databases not because that decision violated the law or the requirements of reasoned decisionmaking but because it created a FOIA backlog. The FOIA provides no authority for a court to entertain such a challenge to agency action without following the requirements of the APA, and courts should not allow parties to evade APA requirements by using the FOIA in this way. The proper avenue for challenging the policies and practices of agencies is the APA, 5 U.S.C. § 706.

## II

In any event, allegations based on an agency policy of "delay" cannot state a claim on which relief can be granted. The FOIA "prescribes no fixed timeframe within which an agency must produce non-exempt records. Rather, the statute establishes a set of procedures for agencies (and requesters) to follow in furtherance of the general mandate to make non-exempt records promptly available." *Judicial Watch, Inc. v. DHS*, 895 F.3d 770, 791 (D.C. Cir. 2018) (Srinivasan, J., dissenting).

For example, the statute provides a "default 20-working-day timeline," *CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013), in which the agency determines "*whether* to comply with [a FOIA] request" and

3

notifies "the person making such request" of that decision, 5 U.S.C. § 552(a)(6)(A)(i) (emphasis added). But "the statute expressly contemplates that an agency could take several months to process a FOIA request, and agencies regularly—and lawfully—take that long to determine whether to produce requested records." *Judicial Watch*, 895 F.3d at 791 (Srinivasan, J., dissenting). A court may not "grant judgment in the requester's favor merely because the default twenty-day period had elapsed without a determination by the agency," considering that "the statute presupposes that the court could recognize that the agency should be given additional time to process the request." *Id.* at 794. The agency may show that it is "exercising due diligence in responding to the request" and making "reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C). Such a showing would be a basis for a court to "allow the agency additional time to complete its review of the records." *Id.* Given the statutory scheme, a requester cannot establish a violation of the FOIA merely by alleging that the agency has engaged in "delay."

Courts that have recognized "policy or practice" claims have emphasized that a requester must at least allege "prolonged, *unexplained* delays in producing non-exempt records." *Judicial Watch*, 895 F.3d at 780 (majority opinion) (emphasis added). The unexplained character of the delay allows for the inference that the agency could have "a policy or practice of ignoring FOIA's requirements." *Id.*

In this case, the alleged delays were not unexplained. The ASPCA itself alleged that the delays resulted from the agencies' backlog of FOIA requests following the decommissioning of the databases in 2017. **[A 21]** Thus, the ASPCA challenged not the "delay" itself but the agencies' policy of decommissioning the databases. The

4

case therefore turned on whether the agencies' database policy was lawful. The FOIA could not answer that question; it contains no provision requiring the agencies to maintain those databases. The nature of the claim here—a challenge to the lawfulness of the decommissioning of the databases—underscores the importance of entertaining challenges to an agency's policy or practice through the framework of the APA rather than under the FOIA.