# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 18, 2015         Decided June 28, 2016

No. 14-5279

FLORENT BAYALA,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY,
OFFICE OF THE GENERAL COUNSEL,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-00007)

*David Cleveland* argued the cause and filed the briefs for appellant.

*Kenneth A. Adebonojo*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Vincent H. Cohen*, *Jr.*, Acting U.S. Attorney at the time the brief was filed, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GRIFFITH, SRINIVASAN, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  Florent Bayala filed a Freedom of Information Act ("FOIA") lawsuit when the Department of Homeland Security failed to disclose many of the immigration documents he had requested and gave no particularized explanation for its withholding decision.  Shortly after Bayala filed suit, however, the Department reversed course and spontaneously released a number of previously withheld documents, while offering a heavily revamped explanation for its remaining withholdings.  After it made that voluntary release, the Department turned around and argued that Bayala's case should be dismissed because he failed to exhaust the administrative appeal process for the Department's *original* and now-displaced withholding decision.  The district court agreed and dismissed the case.  That was incorrect.  The only live FOIA decision now under review is the one the Department chose to make for the first time in litigation, and for which there was no administrative avenue to exhaust.  We accordingly reverse and remand this case for further proceedings consistent with this opinion.

**I**

Florent Bayala is a citizen of Burkina Faso.  After entering the United States in 2012, he applied for asylum and was interviewed at the Arlington, Virginia Asylum Office.  During that interview, the asylum officer took five pages of notes and then subsequently wrote a three-page "Assessment."  In November 2013, Bayala filed a FOIA request with the Department of Homeland Security asking for copies of the asylum officer's notes, the Assessment, and "any material used by the officer, but not given to him."  J.A. 14.

Approximately a month later, the Department responded to Bayala's FOIA request.  In a two-page letter, the

Department advised Bayala that it had identified 157 pages that were responsive to his request. Of those, the Department enclosed 119 pages in their entirety and ten pages in part. J.A. 26. The Department also withheld eleven pages in full, including the notes and the Assessment from Bayala's asylum interview. The Department broadly asserted that all of the withheld documents "contain[ed] no reasonably segregable portion(s) of non-exempt information." *Id.* The Department then provided a laundry list of "applicable" exemptions that it believed justified its withholding, citing without further elaboration 5 U.S.C. § 552(b)(5) (exempting inter-agency or intra-agency memoranda or letters); *id.* § 552(b)(6) (exempting individual information in personnel, medical, and similar files if disclosure would constitute an unwarranted invasion of personal privacy); *id.* § 552(b)(7)(C) (exempting personal information in law enforcement records where disclosure could constitute an unwarranted invasion of personal privacy); and *id.* § 552(b)(7)(E) (exempting law enforcement records involving techniques and procedures for law enforcement investigations or prosecutions). The Department did not specify which exemptions applied to which portions of which withheld pages or why.

The Department also referred fourteen pages "in their entirety to the State Department for their direct response" to Bayala. J.A. 26. The Department further noted that it had located "a potentially responsive document(s) that may have originated from U.S. Immigration and Customs Enforcement," and had "sent the document(s) and a copy of [Bayala's] FOIA request to the [Immigration and Customs Enforcement] FOIA Office for consideration and direct response" to Bayala. *Id.* Lastly, the letter advised Bayala how to appeal the Department's determination administratively.

Bayala did not exhaust that avenue for administrative appeal. Instead, he proceeded straight to district court with a lawsuit alleging that the Department's failure to explain its reasons for non-disclosure left Bayala unable "to make a meaningful administrative appeal," and that the Department had "not provide[d] any reasons or facts for its conclusion that nothing is segregable." J.A. 19, 21. The complaint further explained that the Department's "vague and cryptic" response to his FOIA request "thwart[ed]" Bayala's right to appeal by making any appeal "illusory and a waste of time." *Id.* at 7. The complaint requested that the district court declare that the Department's response violated FOIA and order the Department to "re-write" its letter (i) to "describe what documents were sent to the State Department, and describe what documents were sent to ICE," (ii) to "give the real reasons, and facts, why the notes are exempt, and why nothing is segregable, so that plaintiff may make a meaningful administrative appeal," and (iii) to "give the real reasons, and facts, why the Assessment is exempt, and why nothing is segregable, so that plaintiff may make a meaningful administrative appeal." *Id.* at 21. Bayala also sought to enjoin the Department "from issuing such a letter in the future," as well as an award of attorney's fees. *Id.*

Less than three months after Bayala filed suit and before the Department had responded to the complaint, the Department voluntarily released the asylum officer's notes and a number of other documents it had previously withheld. The Department continued, however, to withhold the Assessment, offering for the first time in its district court papers a new and far more detailed, five-page explanation for its withholding decision. The parties filed cross-motions for summary judgment.

The district court dismissed Bayala's case for failure to exhaust administrative remedies. In so ruling, the court rejected Bayala's argument that the Department's scant and unfocused response to his FOIA request precluded any meaningful administrative appeal. The court reasoned that an administrative appeal would have provided an opportunity for the Department to provide the more detailed reasoning that Bayala sought.

## II

The government argues that we lack jurisdiction because the entire FOIA appeal is moot. Article III's limitation of federal-court jurisdiction to cases and controversies requires that "an actual controversy * * * be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quotation marks omitted). As such, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quotation marks omitted) (citing *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–478 (1990)).

In the FOIA context, that means that once all the documents are released to the requesting party, there no longer is any case or controversy. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform."). But where the government has released only a portion of the requested documents, the case is moot only with regard to those documents. *See Williams & Connolly v. SEC*, 662 F.3d 1240,

1244 (D.C. Cir. 2011). While the Department is correct then that any dispute over the earlier withholding of the documents that the Department has now turned over is moot, the entire FOIA case is not moot because Bayala has *not* received all of the documents that he requested. Bayala's FOIA request sought, among other things, "a copy of the Assessment to Refer of the Asylum Officer." J.A. 23. As of this date, Bayala has not yet received that document and, accordingly, there is still a live controversy over whether the Department may lawfully withhold that document.

Of course, in district court, the Department defended its decision to omit the Assessment from its more recent tranche of disclosures. The Department cited the exemption for internal agency memoranda privileged by law from public disclosure, 5 U.S.C. § 552(b)(5). It is well-settled that "[a]n agency [may] prevail on an exemption that it has * * * raised *either* at the agency level *or* in the district court, [although not an exemption] that it has invoked for the first time in the appellate court." *Jordan v. U.S. Department of Justice*, 591 F.2d 753, 779 (D.C. Cir. 1978) (emphasis added). But the propriety of that withholding determination has not yet been adjudicated and is very much contested, so this FOIA case is not moot.

The government nevertheless argues that the case is moot because, in Bayala's opposition to summary judgment, Bayala said that he is "not *now* seeking the release of documents: he is challenging the administrative appeal process employed by the [Department]." J.A. 135 (emphasis added). That overreads Bayala's submission. His use of "now" indicates that Bayala still wants disclosure of the Assessment. Indeed, Bayala confirmed at oral argument that he still "very much contest[s] that the Assessment is not exempt." Oral Arg. Tr. 4; *see also id.* at 11 (Q: "[T]hey're still withholding the

Assessment and you want that?" A: "Indeed."); J.A. 7 (Complaint ¶ 4) ("Plaintiff is desirous of obtaining the documents * * *."); *id.* at 20 (Complaint ¶ 42) ("There must be some parts of the Assessment which are segregable."); *id.* at 21 (seeking in prayer for relief a declaration that the Department's decision "violates the FOIA"). In short, because "all requested records are [not] surrendered," *Perry*, 684 F.2d at 125, and Bayala still contests that withholding, this appeal is not moot.

While the FOIA case itself is not moot, the dispute over administrative exhaustion is. To be sure, FOIA "specifically provides for an administrative appeal process following an agency's denial of a FOIA request." *Oglesby v. U.S. Department of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990); *see* 5 U.S.C. § 552(a)(6). That requirement, however, is not jurisdictional. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) ("[T]he exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so."); Department of Justice, Guide to the Freedom of Information Act 96 (2016 ed.) ("[F]ailure to file an administrative appeal is not an absolute bar to judicial review."). Exhaustion, instead, can be a substantive ground for rejecting a FOIA claim in litigation.

The Department's argument that exhaustion of its original administrative decision was required, however, became moot once it chose to abandon its previous determination, make a *sua sponte* disclosure of documents, and craft a new, five-page-long explanation for this different withholding decision in the district court, the content and specificity of which went far beyond the original, perfunctory

administrative decision.[1] That new FOIA determination rendered the propriety of the original agency decision—and any administrative challenges to it—an entirely academic question. The lawfulness of the initial administrative disclosure and explanation for withholding, in other words, were no longer live controversies. Nor were Bayala's arguments about the legal necessity of exhausting what he deemed to be a grossly insufficient agency response. Accordingly, the district court erred in dismissing the case for failing to exhaust.

Instead, once the government abandoned its original FOIA decision, the dispute between the parties centered on the correctness of the Department's materially novel and different in-court disclosure decision. There is no required administrative exhaustion process for that in-court litigation decision. Tellingly, FOIA's text provides only for administratively exhausting an "adverse determination" made

---

[1] It bears noting that the Department did not move at the immediate outset of this case, before its voluntary disclosure, to dismiss for failure to exhaust under Federal Rule of Civil Procedure 12(b)(6). That is the typical course of action because exhaustion is generally considered to be an element of a FOIA claim. *See, e.g.*, *Hidalgo*, 344 F.3d at 1260 (vacating the summary judgment order of the district court and remanding the case with instructions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust). Rather, the Department here chose to make a new FOIA determination and then push for summary judgment on the merits of that new withholding decision—arguing under Federal Rule of Civil Procedure 56 that it was "entitled to judgment as a matter of law" in the case because it "(1) conducted a reasonable search; (2) produced all documents responsive to [Bayala's] request and subject to FOIA; and (3) properly withheld information pursuant to valid invocation of FOIA statutory exemptions." J.A. 33.

by the agency within its statutorily required administrative process.  *See* 5 U.S.C. § 552(a)(6)(A)(i) & (ii).  The government, for its part, cites no authority—and we can conceive of none—for compelling a FOIA claimant to administratively exhaust a decision that the agency no longer stands by and that has been overtaken by new and different in-court disclosures and explanations.  Nor can Bayala be compelled to administratively exhaust this new agency decision because that decision was the byproduct of litigation, not of the pre-litigation administrative decision-making process to which FOIA's exhaustion requirement textually applies.

\* \* \*

For those reasons, the question of administrative exhaustion is moot.  We accordingly reverse and remand to the district court for further proceedings consistent with this decision.

*So ordered.*