In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2620

SOTIR LIBAROV,

*Plaintiff-Appellant*,

*v.*

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-06414 — **Jeffrey I. Cummings**, *Judge*.

ARGUED APRIL 10, 2025 — DECIDED MAY 27, 2025

Before RIPPLE, HAMILTON, and PRYOR, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Sotir Libarov is a Bulgarian citizen. His attempt to obtain lawful permanent resident status was denied by United States Citizenship and Immigration Services (USCIS) in June 2022. The following month, Libarov submitted a request to United States Immigration and Customs Enforcement (ICE) under the Freedom of Information Act (FOIA or the Act), 5 U.S.C. § 552, seeking documents relating to himself. After making clear

that he indeed intended to direct his FOIA request to ICE, not USCIS, Libarov waited for a response. He had received none by November 2022. He then filed this suit against both ICE and USCIS seeking an order compelling disclosure of relevant documents. He alleged that both agencies maintained "standard operating procedures" of delaying document disclosures in violation of FOIA and the Administrative Procedure Act (APA), 5 U.S.C. § 702.

In September 2023, ICE told Libarov that it had found six pages of records responsive to his request and that it was withholding all six pages as relevant to an ongoing law enforcement investigation. On cross-motions for summary judgment, the district court concluded that Libarov could not seek declaratory relief resulting solely from delayed FOIA disclosure. The district court also concluded, though, that ICE needed to disclose certain portions of the withheld document. Finally, the court ruled that the FOIA statute provides an adequate remedy for delayed disclosures, precluding Libarov's claim under the APA. Libarov has appealed, arguing (1) that he should be able to receive a declaratory judgment that ICE violated FOIA by failing to adhere to the Act's timing provisions, (2) that ICE must disclose all of the six-page document, and (3) that FOIA does not foreclose his claim under the APA. We agree with the district court on each issue and affirm its judgment.

I.   *Factual and Procedural Background*

After entering the United States legally, Libarov married Elizabeth Alonso Hernandez, a lawful permanent resident. On March 15, 2016, Libarov applied to become a lawful permanent resident based on that marriage. USCIS interviewed Libarov and Hernandez separately in December

2016. USCIS issued a Notice of Intent to Deny Libarov's application in March 2022, concluding that Libarov and Hernandez had entered into a sham marriage for immigration purposes. In the Notice, USCIS explained that Hernandez said under oath that the marriage was arranged by an acquaintance and that she "was offered $10,000 to enter a fraudulent marriage" with Libarov. USCIS ultimately denied Libarov's application for permanent resident status on June 15, 2022. That denial included a more robust description of USCIS's interviews with Libarov and Hernandez.

On July 22, 2022, Libarov, through counsel, submitted a FOIA request to ICE seeking all "forms, statements, notes, emails, text messages, investigative memoranda, electronically stored data, screenshots of DHS databases containing information and data, and all other documents and records pertinent to and/or relating in any way" to Libarov. ICE responded the same day, explaining that complete immigration files (known as A-files) are maintained by USCIS, not ICE. ICE accordingly routed Libarov's FOIA request to USCIS. But Libarov did not want his A-file—he wanted any documents ICE had on him and his application for legal permanent resident status. He responded accordingly, asking that ICE "issue a tracking number and process the request for the records of ICE as requested." ICE did not respond.

Roughly four months later, in November 2022, Libarov filed this lawsuit against both ICE and USCIS. The district court later dismissed Libarov's claims against USCIS. Libarov has not appealed that dismissal.

In September 2023, ICE sent Libarov a letter with a FOIA tracking number and header titled "Interim Release." It explained it was withholding all the information Libarov

sought under FOIA's "7(A)" exemption for documents related to ongoing law enforcement proceedings. See 5 U.S.C. § 552(b)(7)(A).

The parties filed cross-motions for summary judgment. ICE's motion included a declaration from ICE's FOIA Director, Fernando Pineiro, explaining ICE's search procedures. ICE also attached a *Vaughn* index explaining why ICE was withholding the six-page document.[1]

The district court granted most of ICE's motion, explaining that an untimely response did not alone warrant judgment in Libarov's favor and that FOIA provided Libarov with an adequate remedy, foreclosing his claim under the APA. *Libarov v. U.S. Immigr. & Customs Enforcement*, No. 22 C 6414, 2024 WL 3888761, at *5, *8 (N.D. Ill. Aug. 21, 2024). The court also granted summary judgment to ICE on some of its withholdings but granted Libarov's motion to a limited extent, ordering ICE to disclose only portions of the report comprising "basic personal information regarding Libarov himself that Libarov is undoubtedly aware of already." *Id.* at *8. Libarov has appealed on all three issues.

II. *Analysis*

We address first Libarov's argument that he is entitled to a declaratory judgment that ICE violated FOIA because it failed to issue a threshold "determination" on Libarov's FOIA

---

[1] "A *Vaughn* index is a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1036 n.3 (7th Cir. 1998), citing *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973) (requiring a detailed index designating "which portions of the document are disclosable and which are allegedly exempt").

request in the required statutory timeframe. We then review the decision withholding the remaining information under the law enforcement proceeding exemption before finally discussing whether Libarov has an independent cause of action under the Administrative Procedure Act.

A. *Remedies for Slow FOIA Determinations*

The Freedom of Information Act was enacted to "ensure an informed citizenry" and to "hold the governors accountable to the governed." *Vidal-Martinez v. U.S. Dep't of Homeland Sec.*, 84 F.4th 743, 747 (7th Cir. 2023) (internal quotation marks omitted), quoting *Nat'l Immigrant Just. Ctr. v. U.S. Dep't of Just.*, 953 F.3d 503, 507 (7th Cir. 2020). FOIA provides that federal agencies must make a wide array of government records available to the public upon request. 5 U.S.C. § 552(a)(3)(A). "FOIA records must be released 'promptly.'" *White v. U.S. Dep't of Just.*, 16 F.4th 539, 544 (7th Cir. 2021), quoting 5 U.S.C. § 552(a)(3)(A).

Perhaps recognizing that unusual circumstances may make it difficult for agencies to comply with bright-line rules requiring disclosure under specific timelines, FOIA does not require immediate disclosure upon receipt of a request. It requires instead that an agency shall "determine within 20 days … whether to comply with such request and shall immediately notify the person making such request" of its decision, along with some additional information. 5 U.S.C. § 552(a)(6)(A)(i). The statute also provides for extensions of this timeline in circumstances not present here. If an agency does not comply with the "applicable time limit provisions," the FOIA requester "shall be deemed to have exhausted his administrative remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i). "If the agency does not adhere to

FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n* ("*CREW I*"), 711 F.3d 180, 189 (D.C. Cir. 2013).

The district court concluded that FOIA does not authorize relief resulting solely from an agency's late production of requested records. *Libarov*, 2024 WL 3888761, at *5, citing *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 537 (7th Cir. 2005). We review that decision, like any other summary judgment decision, de novo. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013).

The undisputed facts show that ICE did not issue Libarov a tracking number and that it missed by months the 20-day statutory deadline to make a "determination" as required by 5 U.S.C. § 552(a)(6)(A). But the undisputed facts also show that ICE conducted an appropriate search for responsive documents and provided Libarov with information about the reasons why it was withholding those documents. That occurred in September 2023, roughly ten months after this lawsuit was filed. Libarov still seeks a declaratory judgment to the effect that ICE violated FOIA. Accordingly, the first question in this appeal is whether Libarov may seek declaratory relief resulting solely from ICE's failure to issue a determination in the 20-day window. Following our precedents and precedents from other circuits, we conclude that—barring unusual circumstances—a plaintiff in Libarov's situation may not obtain declaratory relief.

We have held at least twice that a suit filed to compel FOIA production becomes moot once the government produces the requested documents. See *Cornucopia Institute v. U.S. Dep't of*

*Agriculture*, 560 F.3d 673, 675–76 (7th Cir. 2009); *Walsh*, 400 F.3d at 536–37 (collecting cases). In *Cornucopia Institute*, the plaintiff made the same argument that Libarov makes here: that while injunctive relief obliging document disclosure might have become moot by disclosure of the requested documents, "the district court remained free to issue a declaratory judgment that the USDA violated FOIA." 560 F.3d at 675–76. We rejected this argument, citing the Supreme Court's explanation that the Declaratory Judgment Act did not "relax Article III's command that an actual case or controversy exist before federal courts may adjudicate a question." *Id.* at 676, quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007). Because the *Cornucopia Institute* plaintiff did not seek "any response to its FOIA requests beyond what it already ha[d] received," the district court properly dismissed the case. *Id.*[2]

*Walsh* and *Cornucopia Institute* squarely resolve this issue. As in both of those cases, the agency here has fulfilled the FOIA request. Also as in both of those cases, Libarov does not

---

[2] On this point, we find further support in our case law and that of several other circuits. See, e.g., *In re Wade*, 969 F.2d 241, 248 (7th Cir. 1992) ("In FOIA cases, mootness occurs when requested documents have already been produced."); *DeBold v. Stimson*, 735 F.2d 1037, 1040 (7th Cir. 1984) ("Once the requested documents have been produced, the claim for relief under FOIA becomes moot."); see also *Empower Oversight Whistleblowers & Research v. Nat'l Institutes of Health*, 122 F.4th 92, 101 (4th Cir. 2024) (agency's delayed response "has already been redressed through constructive administrative exhaustion. Indeed, Appellant proceeded directly to court. … FOIA does not provide a separate cause of action."); *Bayala v. U.S. Dep't of Homeland Sec., Office of Gen. Couns.*, 827 F.3d 31, 34 (D.C. Cir. 2016) ("[O]nce all the documents are released to the requesting party, there no longer is any case or controversy.").

contend that the document production was inadequate. Accordingly, there is no "case or controversy" regarding the adequacy of ICE's production, and he may not seek a declaratory judgment resulting solely from the delay. See also, e.g., *Perry v. Block,* 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

Libarov nonetheless makes three arguments worth addressing. He first contends that the statute requires a finding of liability if the agency does not make a determination in the required time because there has been a technical statutory violation. We disagree. The statute itself spells out what happens if the agency fails to issue a timely determination: the requester "shall be deemed to have exhausted his administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i). "This constructive administrative exhaustion, and resulting ability to begin litigation, is the exclusive remedy for the failure of an agency to respond in a timely manner." *Empower Oversight Whistleblowers & Research v. Nat'l Institutes of Health*, 122 F.4th 92, 100 (4th Cir. 2024).

Libarov's next argument is that ICE, to this date, has not made a required "determination" under the statute. He cites the D.C. Circuit's decision in *CREW I* for the principle that an agency making a "determination" must "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." 711 F.3d at 188. But *CREW I*

actually explained that those three steps are required for an agency to "trigger the administrative exhaustion requirement," not that they are always required. *Id.* at 188–89. Even Libarov's authorities support the view that a plaintiff's remedy when an agency fails to issue a "determination" is the right to go straight to federal court. See, e.g., *Empower Oversight Whistleblowers*, 122 F.4th at 100; *Corbett v. Transportation Sec. Admin.*, 116 F.4th 1024, 1025–26 (9th Cir. 2024) ("If the agency does not timely respond, we deem the requester's obligation to exhaust available administrative remedies constructively satisfied, and the requester may proceed directly to court.").

While Libarov may be right that ICE never issued a formal "determination" as contemplated by 5 U.S.C. § 552(a)(6)(A), he received the relief allowed by the statute. The only additional relief available to Libarov after filing the lawsuit was actual production of the documents. See 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court … has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."). In other words, the purpose of the initial determination is to notify a requester whether he will receive the files. By now, Libarov has received more than that. He has the actual documents, subject to the exemptions discussed below.

Libarov's next statutory argument is that disallowing declaratory relief under FOIA after an agency produces documents renders superfluous 5 U.S.C. § 552(a)(6)(C)(i), which permits district courts to "allow the agency additional time to complete its review of the records" if the agency can show that "exceptional circumstances exist and that the agency is

exercising due diligence in responding to the request…." Why, Libarov asks, would Congress have allowed an agency to seek additional time to process requests if the agency could simply delay production indefinitely once the lawsuit begins? The answer is that, once in court, an agency faces the possibility of a court order obliging it to disclose documents immediately. The safety valve allows agencies to avoid those orders in exceptional circumstances by requesting additional time to respond. Both possibilities support FOIA's purpose, which is to ensure an informed citizenry, while protecting "certain interests in privacy and confidentiality." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998), citing *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Here, ICE did not contend that Libarov's request posed an "exceptional circumstance." Instead, it responded to his request before the dispositive motions deadline, thereby fulfilling, belatedly, its duty to disclose documents.

Libarov cites four cases in which other courts have issued equitable relief to remedy undue agency delays in responding to FOIA requests. All four involved facts substantially different from this case. In three of them, plaintiffs submitted FOIA requests that covered tens of thousands of pages of responsive documents. See *Seavey v. Dep't of Just.*, 266 F. Supp. 3d 241, 243–44. (D.D.C. 2017); *Clemente v. FBI*, 71 F. Supp. 3d 262, 265 (D.D.C. 2014); *Villanueva v. U.S. Dep't of Just.*, No. 19-23452-CIV, 2021 WL 5882995, at *2 (S.D. Fla. Dec. 13, 2021). In *Seavey*, *Clemente*, and *Villanueva*, the defendant agencies slowly processed the documents, and the plaintiffs argued that the courts should order them to expedite those reviews. All three courts agreed to order such relief. *Seavey*, 266 F. Supp. 3d at 248; *Clemente*, 71 F. Supp. 3d at 269; *Villanueva*, 2021 WL 5882995, at *4. When those cases were decided, the defendant

agencies had not yet provided the requested documents, and the requesters had not received any indication from the agencies whether to expect to receive the documents or which exemptions would be applied.

Here, on the other hand, ICE has conducted a sufficient search for responsive documents and provided Libarov with those documents (subject to the exemptions discussed below). *Seavey*, *Clemente*, and *Villanueva* do not support Libarov's position that an agency's mere delay in making an initial determination warrants declaratory relief.

The fourth case that Libarov cites is *Payne Enterprises, Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988). *Payne* supports the premise that some plaintiffs may be entitled to equitable relief stemming from persistent and repeated delays in document production, but not that Libarov is entitled to such relief. In *Payne,* the plaintiff ran a business that relied on accessing information about government contracts through FOIA. Payne's document requests were repeatedly denied by the defendant agency but later granted by an appeals board, which instructed the agency to stop denying the plaintiff's requests. When the agency did not do so, Payne filed suit. *Id.* at 488–90. After the district court dismissed his suit as moot, the D.C. Circuit reversed. It explained that while document production will moot an ordinary FOIA claim, consistent with our explanation above, "this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Id.* at 491 (emphasis in original). The court held that the district court's refusal to grant equitable relief was an abuse of discretion because agency officials had consistently denied Payne's document requests for over two years, infringing his right to information. *Id.* at 494. Later D.C.

Circuit decisions have reiterated that, to state such a "policy or practice" claim, a plaintiff must "allege a pattern of prolonged delay amounting to a persistent failure to adhere to FOIA's requirements and that the pattern of delay will interfere with its right under FOIA to promptly obtain non-exempt records from the agency in the future." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 780 (D.C. Cir. 2018).

In *Walsh* and *Cornucopia Institute*, we left open the possibility that plaintiffs may obtain declaratory or other equitable relief from an agency's persistent FOIA violations. We explained that the plaintiff in *Walsh* could not seek relief because he had not shown more than a "faint possibility" that he might make additional FOIA requests and again be forced to wait too long to receive responses. *Walsh*, 400 F.3d at 537. And in *Cornucopia Institute* we held that the case was moot in part because the plaintiff did not "seek any response to its FOIA requests beyond what it" had already received. 560 F.3d at 676.

Like the plaintiffs in *Walsh* and *Cornucopia Institute*, Libarov has not argued, let alone offered evidence, that he is likely to make additional FOIA requests and be subject to delayed responses. He also concedes that ICE's search for responsive documents here was adequate. These facts distinguish *Payne* and put his case outside the "pattern and practice" exception to *Walsh* and *Cornucopia Institute.* See also *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1102 (9th Cir. 2015) (noting that FOIA allows "pattern or practice" claims but plaintiff had not alleged that delays would impair his access to information in the future; remanding for factfinding on another plaintiff's standing). Accordingly, Libarov

is not entitled to a declaratory judgment against ICE for delayed FOIA responses.

B. *The Exemption*

Libarov also appeals the district court's decision not to require ICE to disclose the six-page document in its entirety. "FOIA requires a federal agency upon request to disclose records in its possession, subject to nine exemptions." *Enviro Tech Int'l, Inc. v. U.S. Env'tl Prot. Agency*, 371 F.3d 370, 374 (7th Cir. 2004), citing 5 U.S.C. § 552(a), (b). Here, ICE invoked exemption 7(A), which exempts from production "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To justify withholding, the government must show first that the information was compiled for law enforcement purposes, and that, "with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings.'" *Robbins Tire*, 437 U.S. at 236, quoting 5 U.S.C. § 552(b)(7)(A); see also *Solar Sources*, 142 F.3d at 1037.

The district court here viewed the document *in camera* and concluded that ICE should disclose the portions of the report containing "basic personal information regarding Libarov himself that Libarov is undoubtedly aware of already." *Libarov*, 2024 WL 3888761, at *8. The court granted summary judgment for ICE on its decision to withhold "the portions of the Report which could reasonably be expected to interfere with enforcement proceedings if disclosed." *Id.* at *7. At oral

argument, counsel for ICE represented that roughly five of the six pages have been disclosed to Libarov.

We employ an unusual standard of review in FOIA exemption cases. We first determine de novo whether "the district court had an adequate factual basis for its decisions," asking whether the district court had enough information to make a "legally sound decision about whether an exemption applies." *Stevens v. U.S. Dep't of State*, 20 F.4th 337, 342 (7th Cir. 2021). This step usually assesses the "specificity of the agency's affidavit, its *Vaughn* index, and whether the district court conducted an *in camera* review of the contested materials." *Id.* If the district court had sufficient information to make a "legally sound" decision about the exemption, we review its conclusion for clear error because district courts are "best situated to conduct the comprehensive, record-by-record review that FOIA withholdings may require." *Id.*[3]

---

[3] Libarov argues in passing that the clear error standard is "at odds with the settled view of other courts that an agency's decision that information is exempt from disclosure receives no deference, and all doubts must be resolved in favor of disclosure." Appellant's Br. at 13, citing *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010); *Epstein v. Resor*, 421 F.2d 930, 933 (9th Cir. 1970). While we have previously acknowledged "doubts" about "how the clear-error standard pops up in an appeal from a summary-judgment ruling, given how well established the de novo standard of review is in such cases," *Vidal-Martinez v. U.S. Dep't of Homeland Sec.*, 84 F.4th 743, 747 n.3 (7th Cir. 2023) (internal quotation marks omitted), Libarov has not developed an argument that would convince us to depart from circuit precedent here. Also, Libarov misconstrues our standard of review. We agree that a district court reviews "de novo all agency decisions applying an exemption." *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 335 (D.C. Cir. 1987), citing 5 U.S.C. § 552(a)(4)(B). But that is not to say that we must review de novo a district court's decision applying an exemption.

At step one, the district court here had an "adequate fac-
tual basis … to make a legally sound decision about whether
an exemption applies." *Id.* The court reviewed an affidavit
from ICE's FOIA Director, Fernando Pineiro, which explained
that the document was created for law enforcement purposes
because it is ICE's mission to investigate "individuals who
may be present in the United States illegally." Pineiro also ex-
plained: "Release of the documents could potentially interfere
with an open and ongoing case and investigation being con-
ducted, as well as enforcement proceedings. Release of the
records would most certainly jeopardize an investigation that
has been ongoing for a long period of time."

ICE also provided a *Vaughn* index, which in a case involv-
ing just one document was not particularly helpful. It simply
designated all six pages as protected under exemption 7(A).
The affidavit was fairly conclusory too, so without more it
might have been difficult to affirm withholding the remaining
information. The *Vaughn* index and conclusory affidavit are
offset, though, by the fact that the district court conducted an
*in camera* review. See *Vidal-Martinez*, 84 F.4th at 748 (district
court had "more than an adequate factual basis" for evaluat-
ing agency withholdings when it conducted *in camera* review
of 51 documents; collecting cases supporting the principle).
We conclude that the district court had an adequate factual
basis to determine whether exemption 7(A) applied. See *id.*

The court's conclusion about exemption 7(A) was not
clearly erroneous. We conducted our own *in camera* review of
the document and see parts that could have been (1) compiled
for law enforcement purposes and (2) could reasonably be ex-
pected to "interfere with enforcement proceedings." 5 U.S.C.
§ 552(b)(7)(A). ICE contends that release of this information

could "jeopardize an investigation that has been ongoing for a long period of time." There is enough information in the redacted part of the report for the district court to conclude that disclosure could interfere with ongoing law enforcement proceedings. See, e.g., *Robbins Tire*, 437 U.S. at 239–42 (disclosure of witness statements could lead to witness intimidation). The district court did not clearly err when it concluded that disclosure of records like this one "would generally 'interfere with enforcement proceedings.'" *Id.* at 236.[4]

Libarov's last argument is that the withheld pages cannot "reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A), because he applied for lawful permanent resident status in 2016, nine years ago and well outside the general five-year statute of limitations in 18 U.S.C. § 3282. This does not persuade us to reverse the district court's 7(A) decision. While Libarov's own conduct itself may fall outside the statute of limitations, those events may still be relevant to an investigation of an ongoing or long-term scheme or conspiracy to commit further violations. Cf. *Solar Sources*,

---

[4] Libarov submits that ICE cannot invoke exemption 7(A) because USCIS already disclosed "a significant portion of its 'investigation' into the Libarov marriage." First, Libarov has not presented evidence on what exactly USCIS disclosed while this litigation has been pending, making it impossible to assess this argument. Insofar as Libarov is referring to the information provided by USCIS in its initial denial of his application for permanent resident status, the information contained in the redacted part of the report is materially different, making this case unlike the cases cited by Libarov. See, e.g., *Chesapeake Bay Foundation, Inc. v. U.S. Army Corps of Engineers*, 677 F.Supp.2d 101, 108 (D.D.C. 2009) (rejecting 7(A) argument when agency did not explain "how its investigation will be impaired by the release of information that the targets of the investigation *already possess*" (emphasis in original)).

142 F.3d at 1040 ("The fact that the Government has closed a particular investigation does not make it any less likely that disclosure in this case 'could reasonably be expected to interfere with enforcement proceedings.'" (quoting 5 U.S.C. § 552(b)(7)(A)). The district court's summary judgment ruling on the 7(A) withholding is affirmed.

C.  *The Administrative Procedure Act*

Finally, Libarov seeks to revive his theory that he should win relief under the APA because ICE maintains a policy of unduly delaying its FOIA responses. His complaint alleges that "since approximately 2010 DHS and ICE have taken the position that 5 U.S.C. § 552(a)(6)(A)(i) does not impose an affirmative obligation or require the agency and its components to make determinations on FOIA requests within the 20-business day statutory timeframe." He requested a court order declaring this "practice" unlawful.

The APA states in relevant part: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The district court concluded that FOIA itself provides an "adequate remedy" for Libarov, and that he therefore could not maintain a cause of action under the APA. *Libarov*, 2024 WL 3888761, at *8. Whether the FOIA statute provides Libarov with an "adequate remedy" under the APA is a question of law that we review de novo. *Delgado v. Holder*, 674 F.3d 759, 766 (7th Cir. 2012).

Here, again, Libarov's argument is foreclosed by circuit precedent. In *Walsh*, we held that "FOIA provides an adequate remedy" for a plaintiff seeking disclosure of documents, because under either statute, the remedy sought is the same: "a

court order requiring total compliance with [the plaintiff's] request." 400 F.3d at 538, citing *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action. … § 704 'does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.'"). Several other circuits have reached the same conclusion. See, e.g., *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.* ("*CREW II*"), 846 F.3d 1235, 1246 (D.C. Cir. 2017) ("FOIA offers an 'adequate remedy' within the meaning of section 704 such that CREW's APA claim is barred."); *Rimmer v. Holder*, 700 F.3d 246, 264 (6th Cir. 2012) ("FOIA provided Rimmer with an adequate remedy in court, and thus Rimmer's APA claim is barred by 5 U.S.C. § 704."); *Central Platte Natural Resources Dist. v. U.S. Dep't of Agriculture*, 643 F.3d 1142, 1148 (8th Cir. 2011) ("FOIA specifically bars judicial review of an APA claim where the claimant seeks 'a court order' to produce the same documents under both FOIA and the APA.").

Libarov argues that his APA claim seeks "a declaration and vacatur of certain final rules" as unlawful, not production of any records. He appears to concede that FOIA provides an adequate remedy for production of documents, but he contends instead that the statute is insufficient to remedy an agency's systemic practice of delaying FOIA responses. We disagree with this position, too. As we explained above, FOIA does, in some circumstances, allow "policy or practice" suits against a defendant agency. See *Payne Enterprises*, 837 F.2d at 494–95; *Judicial Watch, Inc*, 895 F.3d at 780–84; *Walsh*, 400 F.3d at 537; *Cornucopia Institute*, 560 F.3d at 676; see also *CREW II*, 846 F.3d at 1244–46 (explaining that FOIA allows district courts to grant prospective injunctive relief, and that "FOIA

offers CREW precisely the kind of 'special and adequate review procedure[ ]' that Congress immunized from 'duplic[ative]' APA review" (quoting *Bowen*, 487 U.S. at 903)).

Libarov's last argument is that if he cannot seek equitable relief for a delayed determination under FOIA, then FOIA cannot serve as an "adequate remedy" foreclosing relief under the APA. We see no Catch-22. "Importantly, the question of whether a remedy is 'adequate' under § 704 is distinct from the question of whether that remedy presents the plaintiff with a viable path to relief." *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 642 (5th Cir. 2021); *CREW II,* 846 F.3d at 1246 ("[O]ur determination that FOIA is the proper vehicle for CREW's claim is entirely distinct from the question whether CREW is entitled to relief."). Libarov is not entitled to further relief under FOIA in this case, but that does not mean that the FOIA statute is not an adequate remedy for plaintiffs in FOIA cases generally.

The judgment of the district court is AFFIRMED.